No. 99,217

STATE OF KANSAS, *Appellee*, v. STEPHEN JAMES McGINNIS,
*Appellant*.

(233 P.3d 246)

Opinion filed June 4, 2010.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Gerald R. Kuckelman*, county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: The district court denied Stephen J. McGinnis' motion to suppress and convicted him of felony driving under the influence and transporting an open container. After the Court of Appeals affirmed, we granted McGinnis' petition for review under K.S.A. 20-3018(b).

The sole issue on appeal is whether the motion to suppress should have been granted, *i.e.*, whether McGinnis' initial contact with the deputy sheriff was a voluntary encounter or instead an investigatory detention unsupported by reasonable suspicion. We hold it was voluntary and affirm.

## FACTS

On March 20, 2007, at 10 a.m., Atchison County Deputy Sheriff Bryan Clark responded to a call of a possible stolen vehicle. Dis-

patch indicated the vehicle had Missouri plates and was found partially submerged in Independence Creek near its confluence with the Missouri River. Deputy Clark drove his marked law enforcement vehicle north on River Road toward an access road leading east to the vehicle's reported location. When approaching the access road, he saw McGinnis driving in the same direction. Clark paid attention to McGinnis' car because it was the only one in the area.

McGinnis briefly pulled his car to the side of River Road, near its intersection with the access road. He then pulled back onto River Road and drove ⅒ of a mile north. There he turned east onto a second access road: a 30- to 35-foot-long gravel path that basically ended at the bank of Independence Creek. He parked at the end of the path near the bank. Deputy Clark followed McGinnis onto the gravel path and parked two to three car lengths behind McGinnis' car. As he parked, he saw McGinnis standing by the creek bank approximately 15 feet south of McGinnis' car. McGinnis was looking south, the direction of the partially submerged vehicle, but trees and other foliage obstructed an observer's line of sight.

Deputy Clark did not activate his vehicle emergency lights or sirens. Nor did he consider McGinnis a suspect. He got out to ask if McGinnis knew anything about the partially submerged vehicle. When walking by McGinnis' car, Clark saw through the window a 12-pack of Natural Light Beer on the front passenger seat. Clark could not tell if any cans were open. He did not suspect McGinnis of intoxication because he had not witnessed any traffic infractions while following McGinnis there.

When Deputy Clark approached McGinnis near the creek bank, he said "Hi" and asked how McGinnis was doing. He also asked if McGinnis knew anything about the partially submerged vehicle. McGinnis denied having knowledge of the vehicle and indicated that he was looking for a fishing spot, which is common in the area. During this brief encounter, Deputy Clark noticed three indicia of possible intoxication: McGinnis' slurred speech, bloodshot eyes, and an odor of alcohol coming from him. According to Clark, at

this point he began an investigation of driving under the influence of alcohol (DUI).

McGinnis admitted to consuming two beers and consented to a field sobriety test. His first attempt at reciting the alphabet was unsuccessful; he repeated and skipped letters and failed to end on the letter z. His second recitation was successful. But then he failed the one-leg stand while complaining that his feet hurt. Deputy Clark arrested McGinnis and offered a blood test, to which McGinnis agreed. The later blood test at Atchison Hospital revealed that his blood-alcohol level was .12 grams per 100 milliliters of blood, in excess of the legal limit.

The State charged McGinnis with felony DUI, as it was his fourth offense. He was also charged with transporting an open container because one was found in his vehicle after his DUI arrest. After the preliminary hearing, McGinnis filed a motion to suppress all evidence based upon unlawful restraint and seizure without reasonable suspicion of criminal activity. After an evidentiary hearing, the district court denied the motion. It found the initial encounter between Clark and McGinnis was voluntary and properly turned into an investigatory detention.

The same judge then conducted the bench trial. By stipulation, the trial evidence consisted entirely of the transcripts of the preliminary and suppression hearings, at which only Clark had testified. The court then found McGinnis guilty of both charges. McGinnis appealed the denial of his motion to suppress, but a Court of Appeals panel unanimously affirmed. It too held that the initial encounter was voluntary, which then escalated into an investigatory detention:

"Here, Clark was the only law enforcement officer involved in the encounter. Significantly, he parked his patrol vehicle two or three car lengths behind McGinnis' car, and the evidence was undisputed that McGinnis' car was not blocked from leaving the driveway. Clark did not activate his emergency lights when he exited his patrol vehicle. Clark approached McGinnis on foot and did not brandish any weapons. The evidence established that Clark spoke in a normal voice and he did not command McGinnis to stop or to answer any questions. Clark did nothing to convey to McGinnis that he was being detained against his will. Viewed objectively, McGinnis was free to leave, and he could have declined to answer Clark's initial questions. Under the totality of the circumstances, the initial encounter

between Clark and McGinnis was voluntary." *State v. McGinnis*, 40 Kan. App. 2d 620, 627-28, 194 P.3d 46 (2009).

We granted McGinnis' petition for review on this issue. More facts will be added as necessary to the analysis.

## ANALYSIS

Issue: *The initial encounter between McGinnis and Deputy Clark was voluntary.*

McGinnis argues that the entire encounter with Deputy Clark was an involuntary, investigatory detention unsupported by reasonable suspicion and the district court therefore improperly denied his motion to suppress. More particularly, McGinnis primarily argues the encounter was not voluntary because the deputy's vehicle blocked his car and prevented his leaving the access road. McGinnis argues that as a result, all evidence obtained must be excluded as fruit of the poisonous tree. See *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

The State responds that the situation started as a voluntary encounter and McGinnis' departure was not blocked. The episode transitioned into a valid investigatory detention when Deputy Clark smelled alcohol, reasonably suspected McGinnis had been drinking, and began his DUI investigatory detention.

Our standard of review for general motions to suppress evidence is well known:

" 'When reviewing a motion to suppress evidence, this court reviews the factual underpinnings of a district court's decision for substantial competent evidence and the ultimate legal conclusion drawn from those facts de novo. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review. [Citation omitted.] The State bears the burden to demonstrate that a challenged search or seizure was lawful. [Citation omitted.]' " *State v. Morlock*, 289 Kan. 980, 985, 218 P.3d 801 (2009) (quoting *State v. Moore*, 283 Kan. 344, 349, 154 P.3d 1 [2007]).

The parties focus their arguments on whether the initial encounter was consensual, *i.e.*, voluntary. A voluntary encounter is not considered a seizure and is not afforded protection by the Fourth Amendment to the United States Constitution. *State v. Morris*, 276 Kan. 11, 19, 72 P.3d 570 (2003). As a result, if we hold

that the encounter was voluntary, then the DUI evidence was properly obtained.

The United States Supreme Court has developed a "totality of the circumstances" test to determine if there is a seizure, or instead a consensual encounter. See *State v. Thompson*, 284 Kan. 763, 775, 166 P.3d 1015 (2007). "[U]nder the test, law enforcement interaction with a person is consensual, not a seizure if, under the totality of the circumstances, the law enforcement officer's conduct conveys to a reasonable person that he or she was free to refuse the requests or otherwise end the encounter." 284 Kan. at 775. Stated another way, " '[s]o long as a reasonable person would feel free to "disregard the police and go about his business," [citation omitted], the encounter is consensual and no reasonable suspicion is required.' " *State v. Reason*, 263 Kan. 405, 410, 951 P.2d 538 (1997) (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 111 S. Ct. 2382 [1991]). Consequently, in *Reason* we held that only if " ' "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." ' " 263 Kan. at 410-11.

The standard of appellate review for this specific subset of suppression determinations—the trial court's decision of whether the encounter is consensual or a seizure—is quite similar to the standard for general suppression of evidence:

"Appellate review of the trial court's determination of whether a reasonable person would feel free to refuse the officer's requests or otherwise terminate the encounter consists of two parts: (1) the factual underpinnings are reviewed under a substantial competent evidence standard and (2) the ultimate legal conclusion drawn from those facts, *i.e.*, whether a reasonable person would feel free to refuse the requests or to otherwise terminate the encounter, is reviewed under a de novo standard." *Thompson*, 284 Kan. at 776 (citing *Moore*, 283 Kan. at 352).

We begin our analysis by acknowledging that a seizure does not occur simply because a police officer approaches an individual and asks a few questions:

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . . [Citations omitted.] Nor would the fact that the

officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. [Citation omitted.] The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. [Citations omitted.]" *Florida v. Royer*, 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983).

See *Thompson*, 284 Kan. 763, Syl. ¶ 17 ("Law enforcement questioning, by itself, is unlikely to result in a Fourth Amendment violation. Unless the surrounding conditions are so intimidating as to demonstrate that a reasonable person would have believed he or she was not free to disregard the questions, there has been no intrusion upon the detained person's liberty or privacy that would implicate the Fourth Amendment.").

Accordingly, over the years we have recognized several objective factors to help determine whether a law enforcement-citizen encounter is voluntary or an investigatory detention. This nonexhaustive and nonexclusive list includes: the presence of more than one officer, the display of a weapon, physical contact by the officer, use of a commanding tone of voice, activation of sirens or flashers, a command to halt or to approach, and an attempt to control the ability to flee. See *State v. Lee*, 283 Kan. 771, 775, 156 P.3d 1284 (2007); *State v. Morris*, 276 Kan. 11, 19-20, 72 P.3d 570 (2003); *State v. Gross*, 39 Kan. App. 2d 788, 798-800, 184 P.3d 978 (2008).

There is no rigid application of these factors; instead, we analyze the facts of each case independently. We have held that "[i]n applying the totality of the circumstances test in a Fourth Amendment context, no one factor is legally determinative, dispositive, or paramount. The outcome does not turn on the presence or absence of a single controlling or infallible touchstone and requires careful scrutiny of all the surrounding circumstances." *Thompson*, 284 Kan. 763, Syl. ¶ 20. On the other hand, "we do not expect courts to merely count the number of factors weighing on one side of the determination or the other. In the totality of the circumstances, a factor may be more indicative of a coercive atmosphere in one case than in another. [Citations omitted.]" 284 Kan. at 804.

McGinnis argues that a reasonable person would not have felt free to leave under the totality of the circumstances facing him. As

mentioned, he primarily argues that Deputy Clark's parked vehicle blocked his car and effectively prevented him from exiting the access road, constituting a show of authority. As his main support, McGinnis points out that Clark had testified at the preliminary hearing that McGinnis was blocked in and could not leave.

Deputy Clark had further described the access road, however, as a 10- to 15-foot-wide path which, in March, had little vegetation on either side. He had also testified at the later suppression hearing that while the gravel path comes to a dead end near the creek bank, a driver could either back a vehicle out or use the available grassy area to maneuver and eventually exit the path "front-ways" to avoid the deputy's vehicle. We observe that the district court found at trial, based upon the transcripts of the preliminary and suppression hearings at which only Clark testified, that Clark parked two to three car lengths behind McGinnis' car. More important, the court also found "from the testimony" that "Officer Clark was not blocking the defendant's vehicle" because "there was room to maneuver." Because we do not weigh conflicting evidence or redetermine questions of fact, *State v. White*, 284 Kan. 333, 340, 161 P.3d 208 (2007), we easily conclude there is substantial competent evidence supporting these factual findings. See *Moore*, 283 Kan. at 349 (when reviewing motion to suppress evidence, appellate court reviews factual underpinnings of a district court's decision for substantial competent evidence).

The case of *State v. Parker*, 282 Kan. 584, 147 P.3d 155 (2006), contains great guidance concerning the location of the law enforcement vehicle as a factor in the seizure test. There, a police officer drove his marked patrol car to an apartment complex to inquire why three individuals were "hanging out" in a garage. The officer pulled into the driveway leading to the garage and parked behind two other cars in the driveway. Two of the three men in the garage walked over to the officer's car, and the officer noticed one man's hand remained in his pocket. The officer exited his car and asked both men to lift their shirts to see if they were armed. Neither was armed, and the officer asked if either had anything illegal. One of the men produced marijuana, and the officer subsequently discovered crack cocaine on the other.

The *Parker* defendant moved to suppress the evidence. He claimed the encounter was an investigatory detention from the onset solely because the officer prevented Parker from leaving by blocking Parker's car in the driveway. We rejected his argument that this alone constituted a show of authority. We concluded that without other evidence that the officer made a show of authority, the encounter began voluntarily.

Admittedly, *Parker* can be distinguished because of our apparent partial reliance there upon the officer's lack of intent to block the defendant's car. We stated that "[a]bsent facts to establish an intent to block Parker's car, we cannot conclude that the placement of the car is sufficient to establish a show of authority." 282 Kan. at 592. We reiterate, however, that the seizure test is based upon the viewpoint of a reasonable person, *i.e.*, an objective determination: "[W]hether a reasonable person would feel free to refuse the requests or to otherwise terminate the encounter." *Thompson*, 284 Kan. at 776; see *Moore*, 283 Kan. at 352 (citing *State v. James*, 276 Kan. 737, 749, 79 P.3d 169 [2003] [applying the objective standard of a reasonable person]). Although *Parker* mentions officer intent, *i.e.*, a subjective factor, that decision should not be interpreted as changing the objective requirement.

One year after *Parker*, we held in *Thompson* that the law renders the officer's subjective intent irrelevant unless the driver is somehow made aware of the intent. Since there was no evidence that the driver in *Thompson* was aware of the officer's intent, we held that the Court of Appeals erred in considering intent when determining whether the encounter was consensual. 284 Kan. at 806-07; see also *United States v. Mendenhall*, 446 U.S. 544, 554 n.6, 64 L. Ed. 2d 497, 100 S. Ct. 1870, *reh. denied* 448 U.S. 908 (1980) (subjective intent of police is irrelevant to question whether seizure occurred unless it is conveyed to defendant). Similar to our observation in *Thompson*, there is no evidence in the instant case that McGinnis was aware of any intent by Deputy Clark to block his car.

We find additional guidance in *Reason*, 263 Kan. 405, where a police officer stopped his patrol car behind a parked BMW in a Wichita park. Two officers exited and approached the BMW, which

had both doors open and two occupants sleeping in the front seats. The officers woke the occupants, asked for identification, and checked the vehicle registration. Subsequent events produced drugs and drug paraphernalia. The defendant filed a motion to suppress the evidence by challenging the voluntariness of the initial encounter, which the district court denied.

As in *Thompson*, the *Reason* court first acknowledged the objective nature of the applicable test:

" 'We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct *would have communicated to a reasonable person* that the person was not free to decline the officers' request or otherwise terminate the encounter.' " (Emphasis added.) 263 Kan. at 411 (quoting *Bostick*, 501 U.S. at 439).

The evidence showed that "[t]here was room for the BMW to leave by pulling forward and circling in the parking lot to the exit road." 263 Kan. at 406. The position of the police car clearly did not help create an initial seizure because the court concluded that "the officers' approach [to defendant's] vehicle and questioning of [defendant] and [passenger] fit the voluntary encounter situation." 263 Kan. at 412. It was also noted that "[t]he officers did not thwart any attempt by [the vehicle occupants] to leave or make any untoward demonstration of authority, show weapons, or engage in other coercive behavior." 263 Kan. at 412. Consequently, the court ultimately held the initial encounter voluntary.

Like *Parker* and *Reason*, this court also considered the police vehicle placement factor in the seizure test in *State v. Baacke*, 261 Kan. 422, 932 P.2d 396 (1997). There, Baacke and his friend Keen robbed and killed an elderly woman in her rural Kansas home and stopped in a city park in Huntington, Arkansas, to spend the night. The town's police chief noticed the vehicle and contacted Keen, who was behind the steering wheel, and asked for identification. He noticed defendant Baacke sleeping in the back seat. Keen accompanied the chief to the patrol car to check on his identity. When asked if any weapons, drugs, or contraband were in the vehicle, Keen replied there was a loaded, sawed-off shotgun in the back with his friend. Both were placed under arrest for possessing

a prohibited weapon. Baacke ultimately confessed to his involvement in the crimes.

The district court denied Baacke's motion to suppress his statements. On appeal, Baacke argued that the chief's initial contact was an illegal detention. He claimed that "Keen had no ability to terminate the interview because his car was blocked in a wooded area by [the chief's] vehicle, parked 15 feet away." 261 Kan. at 438. This court rejected his claim:

"Nothing in the record suggests that Keen attempted to terminate the encounter with [the chief] or asked to leave, or that [the chief's] vehicle actually prevented his departure. These circumstances would support a finding that a reasonable person would have felt free to leave under the test articulated in *Florida v. Royer*, 460 U.S. 491, 502, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983). Further, the record indicates both Keen and Baacke appeared very willing to comply with every request of the officers." 261 Kan. at 438.

On the other end of the police vehicle placement continuum are several cases cited by McGinnis. Twenty-five years ago in *State v. Epperson*, 237 Kan. 707, 703 P.2d 761 (1985), an officer was in a marked police car checking for signs of forced entry on buildings due to a high number of recent burglaries in the area. At 2 a.m. the officer noticed a legally parked BMW with two occupants. Both occupants appeared startled and one reached quickly to the car floor and straightened back up. The officer immediately pulled his car out of the alley and parked in the middle of the street near the BMW. The two BMW occupants exited their car and started to walk away, but the "officer left his car very quickly and, in order to detain the men who appeared to be leaving," called out to them. 237 Kan. at 708. They stopped. During their conversation near the BMW, the officer noticed an axe handle under the driver's seat, which he retrieved. While reaching for the axe, he looked under the passenger seat and found cocaine.

The defendants in *Epperson* moved to suppress the evidence, claiming the initial encounter was an investigatory detention unsupported by reasonable suspicion. The trial court and Court of Appeals agreed, and we affirmed. We held that the officer

*"parked his patrol car in such a manner that his open car door blocked the lane of travel in which the BMW was parked. The trial court found that he 'cut off*

*their avenue of escape' by leaving his car door open.* Under the facts as disclosed in this record, we conclude that the officer stopped the defendants. The evidence permits no other finding. Since he had no basis in fact for reasonably suspecting that the defendants were involved in criminal activity, the stop amounted to a seizure of the defendants and was unlawful . . . ." (Emphasis added.) 237 Kan. at 714.

The *Epperson* court also relied upon the officer's oral communications to the defendants to support its seizure conclusion. As the officer approached the defendants, he said, "Excuse me," or "Sir," or "something to that effect" to get their attention. He admitted he could have said, "Wait," or "Wait a minute," or words to that effect. 237 Kan. at 713. The court concluded he "did not want the men to leave; he wanted them to remain there while he checked them out." 237 Kan. at 714.

*Epperson* is distinguishable from the facts of the instant case, however, for the same basic reasons expressed by this court in *Parker*. "In *Epperson*, the police officer made a show of authority by parking his car in the middle of the street and blocking the defendant's car. The officer then called out to the defendant as he was walking away from the car." 282 Kan. at 592.

A second case somewhat on the *Epperson* end of the police vehicle placement continuum is *Morris*, 276 Kan. 11. In *Morris*, sheriff's officers found defendant parked in his pickup on a rocky jetty-breaker area at a lake area. Around 9:15 p.m. the officers pulled their two vehicles in behind the pickup " 'and activated the red lights and illuminated the back of his pickup with . . . spot-lights.' " 276 Kan. at 13. They approached the truck on foot and noticed a chemical odor associated with methamphetamine labs coming from inside. Morris was eventually asked to step out of the truck and after further officers' observations, they searched the truck and found " 'a fairly complete meth lab.' " 276 Kan. at 14.

Morris moved to suppress on the basis of an involuntary encounter. The trial court denied the motion, the Court of Appeals affirmed, but we reversed. We held that Morris' encounter was not voluntary. We concluded that the officers' conduct, the activation of the lights in a remote area off a roadway, was a show of authority and Morris submitted to that show. Despite the placement of the

vehicles, there was no apparent discussion about law enforcement blocking the defendant's departure.

*Morris* is distinguishable from the facts of the instant case for the same basic reasons expressed by this court in *Parker*: "This case is distinguishable from *Morris*, where the officers activated their emergency lights behind a parked car occupied by the defendant. The *Morris* court specifically relied on the activation of the officers' emergency lights in concluding that the encounter was not voluntary." 282 Kan. at 593 (citing *Morris*, 276 Kan. at 20).

A third case on the *Epperson* end of the continuum is *State v. Gross*, 39 Kan. App. 2d 788, 184 P.3d 978 (2008). There, driver Stroot parked and got out of his car, when two officers in a patrol car parked parallel to or behind his car. The Court of Appeals panel appeared to rely, in part, upon this factor to conclude that the encounter was not voluntary. See 39 Kan. App. 2d at 797-801. However, other factors demonstrating a show of authority were also involved. The panel noted that the police vehicle emergency lights were activated. Additionally, while Stroot was walking from his car to a nearby house, one officer called out and asked Stroot where he was going. Stroot was eventually ordered to the back of the patrol car where he was further questioned.

Another officer approached defendant Gross, who was seated in Stroot's car, and asked her questions about where she was going. That officer confronted Stroot with Gross' answers and then returned to Gross. He asked her to open her door, told her he was entitled to the information and directed her to roll down the window or open the door. She complied. The panel had little apparent difficulty in concluding that Stroot was prevented from walking away from his car, that Gross was restricted in exiting the car while the officer asked questions, and that the position of the police vehicle with emergency lights activated all demonstrated that "the officers were in control and Stroot and Gross were obeying." 39 Kan. App. 2d at 799. The court concluded: "It became clear that the officers were not going to leave Stroot and Gross alone until the officers got the information they wanted. A reasonable person in Gross' position would not have felt free to disregard the officers' requests and terminate the encounter." 39 Kan. App. 2d at 799.

This combination of many factors compromising a seizure makes *Gross* easily distinguishable from the facts of the instant case.

After review of this case law, we conclude that under the totality of these circumstances, Deputy Clark's conduct would convey to a reasonable person that he or she was free to refuse to answer the deputy's questions or otherwise terminate the initial encounter. See *State v. Thompson*, 284 Kan. 763, 775, 163 P.3d 1015 (2007). In short, it was voluntary until Clark began his DUI investigation. McGinnis admits that the relevant circumstances in this seizure test include the presence of only one officer, Deputy Clark; the lack of the display of any of Clark's weapons; the lack of physical touching by Clark until effectuating the arrest for DUI; the lack of Clark's commanding tone, indeed, his maintenance of a cordial and conversational tone until initiating the DUI investigation; the lack of a Clark command for McGinnis to halt or to approach Clark; and the lack of activation of Clark's vehicle emergency lights or sirens.

The primary factor advanced by McGinnis in support of an investigatory detention, the location of Deputy Clark's vehicle in relation to his own, makes this case most similar to *Parker*. As mentioned, there we held this factor was insufficient to constitute a seizure in light of the other circumstances indicating a consensual encounter. 282 Kan. at 593; see *State v. Reason*, 263 Kan. 405, 411-13, 951 P.2d 538 (1997); *Baacke*, 261 Kan. at 438. We acknowledge that courts should not merely count the number of factors weighing on one side of the determination or the other and that, in the totality of the circumstances, a particular factor may be more indicative of a coercive atmosphere in one case than another. *Thompson*, 284 Kan. at 804. However, here the court found McGinnis was not blocked; he could have maneuvered and driven away. Deputy Clark left space between his car and McGinnis'— 2-3 car lengths. Even if he intended to prevent McGinnis' departure, *e.g.*, by leaving his door open to block the exit as in *Epperson*, there is no evidence in the record indicating his intent was communicated to McGinnis, which would allow its consideration in the seizure calculus. See *Thompson*, 284 Kan. at 809.

Even if McGinnis were prevented from leaving by the location of Deputy Clark's vehicle, we observe that the Tenth Circuit Court of Appeals has held that this fact, by itself, is not dispositive of the voluntariness of the encounter:

"[H]ere, Officer Zepeda simply approached Mr. Thompson and asked if he could speak to him. The officer did not block his path or restrain him in any way. Where an individual is on foot when approached by the police officer, the fact that his car may be blocked does not, in itself, render the person's decision to answer questions or consent to a search involuntary." *United States v. Thompson*, 546 F.3d 1223, 1229 (10th Cir. 2008).

Besides placement of Deputy Clark's vehicle, McGinnis' brief to the Court of Appeals appears to mention two other, albeit considerably lesser, alleged points for consideration in the totality of the circumstances. The Court of Appeals opinion mentions but does not truly analyze them: (1) Deputy Clark's questioning of McGinnis "about a known criminal act" (or a "reported crime") and (2) approaching McGinnis while McGinnis was standing by his car near the creek bank looking for a fishing spot. This incomplete, or lack of, analysis is not critical to our own analysis for several reasons.

First, according to the factual recitations in McGinnis' brief and his petition for review, Officer Clark "testified that he said 'hello,' asked Mr. Clark if 'everything was okay', and then asked whether he knew anything about the submerged vehicle." None of the record citations McGinnis provides, and frankly nothing anywhere else in the record indicates, that Clark mentioned to McGinnis that the submerged vehicle was allegedly stolen, *i.e.*, a "known criminal act." Nor is there anything in the record indicating that McGinnis had independent knowledge of the vehicle being involved in, or subject to, any criminal act. The test for a seizure requires us to examine the totality of the circumstances from an objective viewpoint. We therefore do not deem this otherwise innocuous question to be a consideration when determining whether a reasonable person would feel free to refuse to answer it or to otherwise terminate the encounter.

Second, as for Clark's approaching McGinnis, we previously mentioned that "[l]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the

street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . ." *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991). The alternative of calling McGinnis to approach Deputy Clark clearly would be more of a demonstration of authority. See *Gross*, 39 Kan. App. 2d at 799-801 (part of the totality of circumstances demonstrating a seizure was ordering driver back to the car as he walked away); *cf. Epperson*, 237 Kan. at 713-14 (part of the totality of circumstances demonstrating seizure of defendants was the officer's calling out to them, which stopped them as they walked away from their parked car).

We believe that the deputy was authorized to do more than patiently wait for McGinnis to approach him according to McGinnis' personal timetable—assuming McGinnis would do so at all when he was done fishing or at least done looking for a fishing spot. See *Reason*, 263 Kan. at 411-13 (although no articulable suspicion that defendant and passenger were committing crimes, officers' approach to defendant's vehicle parked in city park and their questioning of defendant fit voluntary encounter situation; there was room for vehicle to leave and officers did not thwart any attempt to leave, make any untoward demonstration of authority, show weapons, or engage in other coercive behavior); *State v. Young*, 37 Kan. App. 2d 700, 714-17, 157 P.3d 644 (2007) (voluntary encounter where uniformed and armed officer exited vehicle and approached defendant on foot before defendant left the park, but no evidence officer commanded defendant to stop, blocked his path, or prevented him from leaving; also no evidence officer demanded that defendant answer any of his questions). But to the extent that approaching McGinnis under these circumstances is a consideration, however small, in the seizure calculus, we hold that the result and analysis presented above in *Reason* controls. See *Thompson*, 546 F.3d at 1226-29.

Because we hold the encounter was voluntary, we need not reach McGinnis' argument that the involuntary encounter was not supported by reasonable suspicion.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.