NOT DESIGNATED FOR PUBLICATION

No. 112,494

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JUSTIN LYLE CRANE,
*Appellant.*

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Opinion filed October 23, 2015. Reversed and remanded with directions.

*Donald R. Snapp*, of Newton, for appellant.

*Jamie L. Karasek*, temporary county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., SCHROEDER, J., and HEBERT, S.J.

*Per Curiam*: Justin Lyle Crane appeals the denial of his motion to suppress and his ultimate convictions for possession of marijuana, possession of drug paraphernalia, and disorderly conduct. At the time of Crane's arrest for crossing a street as a pedestrian under the influence, the arresting officers lacked probable cause to arrest Crane. He was not illegally crossing the neighborhood street and the officers' brief encounter of Crane on another street was insufficient to establish probable cause Crane was sufficiently under the influence to justify his arrest without further investigation. We find the motion to suppress should have been granted by the district court. We reverse and remand with instructions that Crane's motion to suppress be granted.

1

Just after 2 a.m. on April 6, 2013, Officer John Hill of the McPherson Police Department was on patrol driving southbound on Elm Street when he observed Crane laying half on the sidewalk and half in the grass in a residential area. Officer Hill stopped to check on Crane's welfare. As Officer Hill approached, Crane immediately stood up and began walking away. Officer Hill asked Crane if he could talk to him for a minute, if he was okay, his full name including spelling, where he was headed, if he had been drinking, his age, and birth date.

Officer Hill testified he could smell alcohol on Crane. Crane told Officer Hill he had been drinking at a local bar and was walking to a friend's house. Officer Hill testified Crane's eyes were bloodshot, his speech was slurred, he was staggering, and generally unsteady on his feet.

Feeling as if he was being interrogated, Crane asked Officer Hill if he was under arrest or had committed any offense. After a slight hesitation, Officer Hill told Crane he was not under arrest and was free to go. Crane immediately began walking away from Officer Hill on the sidewalk. Officer Hill continued to observe Crane as he walked away.

While Officer Hill was observing Crane, Officer Petersen arrived on scene. The officers observed Crane walking down the sidewalk and testified they saw him swaying from side-to-side in a staggering manner. On the dashcam video, Officer Petersen can be heard asking if Officer Hill could arrest Crane for pedestrian under the influence. Officer Hill can be heard saying, "He's on the sidewalk." As soon as Crane crossed the street, the officers rushed in to arrest him as he was crossing a second street in front of, or very near to, his destination. Crane was not using a crosswalk and was not crossing at an intersection. At the motion to suppress hearing, Officer Hill testified vehicles are driven down that street on a regular basis; however, at trial he admitted there was no traffic

during the time period he was interacting with Crane. The video reflects a quiet residential neighborhood with no traffic.

Again making contact with Crane, the officers informed him he was under arrest for the criminal offense of pedestrian under the influence. Crane initially began to walk away from the officers, but the officers immediately grabbed Crane and placed him in handcuffs. Upon arrest, Crane became very agitated and emphatically insisted his constitutional rights were being violated. Crane testified at trial that he walked away because he did not initially hear the officers state he was under arrest.

After placing Crane in handcuffs, Officer Petersen began a safety pat down. During the pat down, Officer Petersen located a sandwich bag containing a green leafy substance later determined to be marijuana. Crane was very vocal that the officers were conducting an illegal search of his person and violating his civil rights. In response to Crane's yelling, Crane's friends exited their house and began questioning the police on why Crane was being arrested. Crane was transported to the McPherson County Jail and was charged with alternate counts of misdemeanor possession of marijuana, misdemeanor possession of drug paraphernalia, disorderly conduct, and pedestrian under the influence of alcohol.

Crane moved to suppress all evidence discovered after he was arrested on the grounds the officers lacked probable cause to arrest him for being a pedestrian under the influence because he did not constitute a hazard. After a hearing, the district court denied Crane's motion to suppress finding the officers had probable cause to believe Crane was under the influence of alcohol and was creating a hazardous situation by crossing the street in a diagonal manner. Crane moved for the district court to reconsider its decision. The district court denied Crane's motion to reconsider. During his jury trial, Crane contemporaneously objected to the introduction of the evidence he had previously tried to

3

suppress. The district court denied Crane's objections and permitted the introduction of the evidence.

Crane was found guilty of possession of marijuana, possession of drug paraphernalia, and disorderly conduct. He was found not guilty of pedestrian under the influence. Crane timely appeals his convictions and the district court's denial of his motion to suppress and motion to reconsider.

ANALYSIS

*Did the district court err when it denied Crane's motion to suppress?*

On appeal, Crane argues the district court erred when it denied his motion to suppress because the officers lacked probable cause to arrest him for being a pedestrian under the influence in violation of K.S.A. 8-1543. Since he was illegally seized, Crane argues all evidence seized from his person as a result of the arrest should be suppressed as fruit of the poisonous tree.

When reviewing a district court's decision on a motion to suppress, the appellate court applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence, assess the credibility of witnesses, or redetermine questions of fact. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). The appellate court accepts as true "all inferences to be drawn from the evidence which support or tend to support the findings of the district court." *Reiss*, 299 Kan. at 296. Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). When the material facts are not in dispute, the question

4

of whether to suppress evidence is a question of law over which an appellate court has unlimited review. *State v. Stevenson,* 299 Kan. 53, 57, 321 P.3d 754 (2014). The State bears the burden of proof for a suppression motion. It must prove to the trial court the lawfulness of the search and seizure. *Reiss*, 299 Kan. at 296. The exclusionary rule is a judicially created remedy which exists to prevent the use of unconstitutionally obtained evidence in a criminal proceeding against the subject of the illegal search. The rule applies when it would act as a deterrent. *Hudson v. Michigan*, 547 U.S. 586, 594, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006). When the trial court has denied a motion to suppress, the moving party must object to the introduction of that evidence at the time it was offered at trial to preserve the issue for appeal. *State v. McCaslin*, 291 Kan. 697, 726, 245 P.3d 1030 (2011). Crane contemporaneously objected at trial; this issue has been properly preserved.

"The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights assure each person the right to be secure in his or her person against unreasonable seizures." *Reiss*, 299 Kan. at 296-97. In order to enforce these constitutional provisions, this court must determine if a seizure occurred and if the seizure was reasonable. *Reiss*, 299 Kan. at 297.

> "We determine whether a seizure has occurred by classifying the nature of the encounter between police and citizen. We recognize four types of encounters: consensual encounters, which are not seizures; investigative detentions, commonly known as *Terry* stops; public safety stops; and arrests. [*State v.* ]*Thompson,* 284 Kan. [763, ]772, 166 P.3d 1015 [(2007)] (citing *State v. Parker,* 282 Kan. 584, 588-89, 147 P.3d 115 [2006]); see K.S.A. 22-2402; *Terry v. Ohio,* 392 U.S. 1, 18, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

> "Once we have determined a seizure occurred, we must then determine whether the seizure was reasonable. Because the Fourth Amendment only forbids 'unreasonable' seizures, reasonableness is the touchstone for analysis of whether a seizure is constitutionally permissible. *State v. Spagnola,* 295 Kan. 1098, 1105, 289 P.3d 68 (2012)

5

(citing *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S. Ct. 417, 136 L. Ed. 2d 347 [1996]). And the reasonableness of a seizure is generally determined by balancing 'the public interest and the individual's right to personal security free from arbitrary interference by law enforcement officers.' *Thompson,* 284 Kan. at 772, 166 P.3d 1015 (citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L. Ed. 2d 607 [1975])." *Reiss*, 299 Kan. at 296-97.

Crane's seizure was clearly an arrest. The officers testified at both the motion to suppress hearing and at the jury trial that they approached Crane for the second time with the intent to arrest him for being a pedestrian under the influence. Crane's warrantless arrest was an unreasonable seizure because the officers lacked probable cause. See *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012).

The Kansas Supreme Court has defined probable cause as:

"'[T]he reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. *State v. Abbott,* 277 Kan. 161, 164, 83 P.3d 794 (2004). Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. *Bruch,* 282 Kan. at 775-76. Probable cause is determined by evaluating the totality of the circumstances. *State v. Hill,* 281 Kan. 136, 146, 130 P.3d 1 (2006). As in other totality of the circumstances tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other. *State v. McGinnis,* 290 Kan. 547, 552-53, 233 P.3d 246 (2010); see *Smith* [*v. Kansas Dep't of Revenue*], 291 Kan. [510], 515, 242 P.3d 1179 [(2010)] (holding that the defendant's list of facts did not negate the other factors presented).' *Allen v. Kansas Dept. of Revenue,* 292 Kan. 653, 656-57, 256 P.3d 845 (2011)." *Sloop*, 296 Kan. at 20.

In order for Crane's arrest to be lawful, the officers had to reasonably believe Crane was guilty of violating K.S.A. 8-1543, which states: "A pedestrian who is under the influence of alcohol or any drug to a degree which renders such pedestrian a hazard shall not walk or be upon a highway except on a sidewalk. Violation of this section is a

6

misdemeanor." Highway is defined in an earlier section of the traffic code to mean "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for the purposes of vehicular travel." K.S.A. 8-1101(c).

At the motion to suppress hearing, Officer Hill testified he stopped Crane only after he crossed the street in a diagonal manner without using a crosswalk or crossing at a corner. When asked under cross-examination what factors he took into account to determine Crane was under the influence of alcohol to the degree where he constituted a hazard, Officer Hill elaborated that when he initially saw Crane he was lying on the ground, smelled of alcohol, and had other indicators of intoxication such as bloodshot eyes and slurred speech. Finally, when Crane walked away, he was staggering from side-to-side and did not appear able to walk a straight line. Officer Hill admitted that when Crane crossed the road there were no vehicles coming in either direction. As the dashcam video reflects, Crane was able to walk, answer questions, and was capable of arguing to the officers that his rights were being violated.

At the suppression hearing, Officer Peterson testified that when he arrived at the scene there was probable cause to arrest Crane based on the way he was walking in a stumbling fashion and illegally crossing the street. When asked why he considered Crane a hazard, Officer Peterson replied, "Being in the roadway is hazardous . . . if you're a pedestrian not in a crosswalk." The officers arrested Crane only after he had successfully crossed a street once and was in the process of crossing another street.

After hearing the testimony at the suppression hearing, the district court asked the State: "Based upon the officer's testimony, I don't have any doubt that the officer had probable cause to believe that [Crane] was under the influence of alcohol. My question to you is what constituted the hazard under the statute?"

7

The State responded that simply being intoxicated out on the road at night was sufficient to meet the requirements under the statute. "He clearly was intoxicated. He clearly was crossing the street in an illegal fashion. It was dark, it was 2:00 a.m., it wasn't a broadly lit street. It was a street that was traveled by cars; it wasn't something that was randomly traveled by cars." In addition the State argued that even if there was not probable cause for the arrest, when the officers approached Crane for the second time they were performing an investigatory stop and Crane's refusal to cooperate provided probable cause. This statement was not consistent with the officer's testimony that they approached Crane to arrest him, not for further investigation. The district court ultimately held:

> "From the testimony I heard, the initial contact was made by Officer Hill around 2:10 in the morning on the date in question which was April 6th in the early morning hours. He testified that his initial observation was that he observed the defendant laying out on the ground or on the sidewalk at Elm and Skancke here in the city of McPherson. He said his initial reason for contacting the defendant was because he was concerned about his welfare. When he approached the defendant or when they made contact with each other, he testified that he smelled an odor of alcohol about the defendant. We heard that the defendant admitted he'd been drinking. The officer also testified that he observed bloodshot eyes, that his speech was slurred and noted that he was having trouble with his balance, and both officers testified that the defendant was staggering and was having trouble with his balance. Whether or not that was from a shoe or whatever, but that was their observations. They also testified, or at least I heard testimony that after he left Officer Hill's initial contact that he eventually had crossed the street in a diagonal fashion. He didn't use a crosswalk. As testimony indicated, it was dark that evening. It was not a well lit area. It was about 2:00 in the morning. Even though it was not a heavily traveled area, the Court believes that the officer did have probable cause to believe that the defendant was under the influence of alcohol at that time and it's also the Court's finding that the officer had probable cause to believe that he was creating a hazard at that time. Had he not crossed diagonally, it might be a different question, but in the Court's view someone that's creating a hazardous situation, if they're under the influence and walking not in a crosswalk but, you know, in a diagonal way across the street, that creates

8

a hazardous situation, also the fact that in the officer's belief he was under the influence of alcohol. Had he fell or passed out and would have been laying in the street, that would have created certainly a dangerous situation. So, based upon that, the Court is going to overrule the motion to suppress."

The district court's findings are based on the concept Crane was somehow crossing the street illegally by not using a crosswalk or by crossing the street at a diagonal. K.S.A. 8-1534 governs pedestrians crossing the street:

"(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

"(b) Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right-of-way to all vehicles upon the roadway.

"(c) Between adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked crosswalk.

"(d) No pedestrian shall cross a roadway intersection diagonally unless authorized by official traffic-control devices; and, when authorized to cross diagonally, pedestrians shall cross only in accordance with the official traffic-control devices pertaining to such crossing movements."

Looking first at K.S.A. 8-1534(a), Crane was crossing the roadway at a point other than within a marked crosswalk; however, when he crossed the street there were no vehicles coming in either direction. K.S.A. 8-1534(b) does not apply. K.S.A. 8-1534(c) also does not apply because per the pictures presented at trial, there was no traffic-control signal at the next intersection. Finally, K.S.A. 8-1534(d) does not apply because Crane was not crossing a roadway intersection diagonally. It was not illegal to cross the street at an angle under these circumstances. Crane was not in violation of K.S.A. 8-1534.

9

While it is clear from the record Crane had consumed alcohol, what is not clear is that he was intoxicated and a hazard in crossing the street to his friend's house. He crossed the street in a legal fashion, he had successfully crossed one street before the officers moved in to arrest him, he was able to walk and communicate successfully, and there were no cars approaching from either direction before or after Crane crossed the street. When the totality of the circumstances is considered, no objectively reasonable police officer would have had probable cause to arrest Crane for being a pedestrian under the influence. All evidence of criminal wrongdoing obtained after Crane's unlawful seizure was therefore tainted. See *State v. McGinnis,* 290 Kan. 547, 551, 233 P.3d 246 (2010).

Because Crane was unlawfully seized, the search of his person was an illegal search and the district court erred in denying Crane's motion to suppress. We reverse and remand with directions for the district court to grant Crane's motion to suppress.

Reversed and remanded with directions.