NOT DESIGNATED FOR PUBLICATION

No. 114,624

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

ASHLEY ELISABETH DILLMAN,
*Appellee*.


MEMORANDUM OPINION

Appeal from Harper District Court; LARRY T. SOLOMON, judge. Opinion filed June 24, 2016. Reversed and remanded with directions.

*Janis I. Knox*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Elaine M. Esparza*, of Harper, for appellee.

Before GARDNER, P.J., LEBEN, J., and HEBERT, S.J.

*Per Curiam*: The State appeals from an order of the district court granting Ashley Dillman's motion to suppress evidence seized in a search of her automobile and dismissing the case against her with prejudice.

We find the district court erred by granting the motion to suppress and in dismissing the case. We reverse these judgments, reinstate the case, and remand for further proceedings consistent with this opinion.

1

*Factual and Procedural Background*

In May 2015, the State charged Dillman with numerous drug crimes, including distribution or possession with intent to distribute methamphetamine, possession of methamphetamine, possession with intent to distribute marijuana, two counts of possession of drug paraphernalia, possession of methamphetamine without a tax stamp, and possession of marijuana without a tax stamp. The evidence supporting these charges was seized from Dillman's vehicle during a stop in Harper County.

Dillman moved for suppression of the evidence as well as statements she made to officers prior to her arrest. Dillman alleged the warrantless search of her vehicle violated the Fourth Amendment to the United States Constitution prohibiting illegal searches and seizures. She argued her encounter with the police officer was not consensual but was the product of an extended traffic stop and she gave no valid consent to the search. The State responded the search was valid because the officer had probable cause to believe there were drugs in Dillman's car and the exigent circumstances exception to the warrant requirement justified the search. The State also argued the search was consensual.

During the hearing on the motion to suppress, the State presented testimony of several law enforcement officers. Officer Nathan Houston testified regarding information which had been obtained from an individual named Chad Haley who had been arrested with a large quantity of drugs. The district court sustained Dillman's hearsay objection to the admission of any statements which Haley had made to Houston. The State was, however, allowed to make a proffer for the record which indicated that Haley told police about persons who brought methamphetamine from Wichita to Harper County, including a girl known as "Dilly" from whom he often purchased methamphetamine. Haley advised officers that Dilly would go to a house in the Anthony area belonging to Brody Kahle to sell methamphetamine several times per week. He gave a detailed physical description of Dilly as being about 18 years old, small framed, with sandy blond hair,

methamphetamine sores on her face, and facial piercings. He also gave a detailed description of her vehicle as a small red Aveo which was missing some hubcaps and gas cap and had plastic on the windows. Haley further advised Dilly would set up in front of Kahle's house, and he provided names of various persons to whom she would sell. According to Haley, she would come in the mornings and leave later in the afternoon or the next day, and she was usually driven by someone named Nicholas.

Through Harper County Deputy Scott McCann, the State proffered testimony regarding the credibility of Haley, as having previously given detailed and accurate information regarding the location of drugs in another residence where a search warrant was being served.

Several weeks after receiving Haley's information, Officer McCann was on patrol duty in Anthony and observed a small red vehicle, which appeared to match the description given by Haley leaving Kahle's house on the morning of May 22, 2015. Officer McCann followed the vehicle as it drove from Anthony to Harper, a distance of approximately 10 miles. He testified that his purpose in following the Aveo was due to the ongoing drug investigation. He ultimately observed the vehicle's passenger side tires cross the white fog line on the road while making a right turn in Harper, and activated his emergency lights and pulled the vehicle over. Officer McCann parked behind the red Aveo.

Officer McCann ran the license plate number and secured driver's licenses from the driver, identified as Nicholas Ward, and the passenger, identified as Dillman. The car was registered to Dillman who advised Officer McCann that the insurance information was on her phone. At some point, Officer McCann called Officer Braden Blackburn to come to the site to assist him.

3

Officer McCann asked Ward to come to the police vehicle while he wrote out a warning citation for failure to maintain a lane. Officer McCann asked Ward where he had been that morning and Ward replied they had been at Kahle's house. Officer McCann went back to the car, checked the information on Dillman's phone, and advised Ward that the traffic stop was over and they were free to go. After stepping away from the Aveo, Officer McCann turned back to the passenger window and asked Dillman if she would be willing to speak to him privately. He advised her that such conversation would be consensual and it was up to her. Dillman agreed, and after Officer McCann had turned away and was proceeding to his patrol car, Dillman exited the Aveo and went to Officer McCann's vehicle. It was raining lightly at the time. While they were in the patrol car, Officer McCann mentioned to Dillman several times their conversation was consensual, which she acknowledged. Officer McCann told Dillman he had spoken to one of her friends who indicated he had been present at Kahle's house when she was selling methamphetamine. Dillman acknowledged that she used to go to Kahle's house frequently, but this was the first time they had been back since Haley's arrest. She admitted to using drugs at Kahle's the preceding evening and leaving some behind, but denied selling anything. Officer McCann continued the conversation, mentioning favors Dillman had been accorded in the past, and she ultimately admitted she had some methamphetamine in a bag in her car. Officer McCann then advised her that he now had probable cause to search and asked for her permission to search the car. Dillman twice advised him that she would rather he did not search, but Dillman identified where in the car the bag would be found. Officer McCann then retrieved the bag and opened it in front of Dillman and Officer Blackburn, disclosing four bags of methamphetamine, a bag of marijuana, and various drug paraphernalia. Officer McCann placed Dillman under arrest and advised her of her *Miranda* rights.

A dashcam video recorded the events testified to by Officer McCann when he followed the car from Anthony to Harper, through and including retrieval of the bag from

4

Dillman's car. The video lasts approximately 43 minutes and was reviewed by the district court. We have also reviewed the video which is part of the record on appeal.

After taking the matter under advisement and requesting briefs from the parties, the district court issued a written ruling granting Dillman's motion to suppress, and *sua sponte* dismissed the case with prejudice. The district court made extensive findings of fact and reached several conclusions of law which will be addressed in more detail as appropriate to our opinion.

The State timely appealed.

*Exclusion of Hearsay Evidence*

We first address the State's contention the district court erred as a matter of law by excluding as hearsay the testimony regarding the information received from the informant, Chad Haley.

We generally review the admission or exclusion of evidence in a proceeding on an abuse of discretion standard. *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004). However, if the trial court commits a legal error in its evidentiary ruling, we exercise de novo review. *State v. Holman*, 295 Kan. 116, 133, 284 P.3d 251 (2012).

K.S.A. 2015 Supp. 60-460 provides: "Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible." In the case at bar, the State argues the evidence regarding Haley's information was not offered to prove the truth of those statements, but rather to establish the basis for the officer's reasonable suspicions regarding the description of Dillman's car and the nature of the activities she might be

5

engaged in. The State would also suggest that hearsay is admissible in suppression hearings.

We agree that the district court erred as a matter of law by finding the statements attributed to Haley to be inadmissible hearsay, since the truth of Haley's information was irrelevant to the purpose for which it was admitted. The evidence proffered by the State should have been admitted as relevant to the basis for the ongoing drug investigation.

We take note, however, in the conclusions of law set forth in the lengthy ruling on defendant's motion to suppress evidence, the district court somewhat inconsistently stated parenthetically:  "(Note: While the Court sustained Defendant's objection to hearsay at the suppression hearing, the Court is assuming that Deputy McCann had the knowledge of Defendant and her vehicle [from Chad Haley] as he testified at the hearing.)"

Thus, it appears the district court did, in fact, consider the evidence which it had previously excluded, thereby effectively rectifying the error complained of by the State. For purposes of our analysis, we will consider the Haley information proffered by the State as admitted.

There is some support for the notion that hearsay standards are somewhat relaxed during a proceeding where the defendant's guilt is not at issue. See *State v. Watkins*, 40 Kan. App. 2d 1, 8, 190 P.3d 266 (2007), *rev. denied* 286 Kan. 1186 (2008). In light of our determinations the contested testimony here was not hearsay and the district court effectively corrected its errant ruling regarding admissibility, we need make no further inquiry and will leave for another day the question of whether the hearsay rules strictly apply in a suppression hearing.

*The Initial Stop*

Officer McCann stopped the red Aveo he was following when he observed the passenger side wheels briefly cross the right fog line when making a right turn, which he believed to be a traffic violation. His observation is confirmed by his dashcam video. Officer McCann candidly testified that, although he was following the car due to the ongoing drug investigation, he subjectively did not believe he had grounds to stop the car prior to the traffic violation.

Neither Dillman nor the State addressed the legality of the initial stop at the suppression hearing, nor was the issue briefed by the parties prior to the district court's ruling. Indeed, the district court concluded that both sides assumed the initial stop to be valid, an assumption with which the district court disagreed. The district court concluded the information from Haley was too stale to provide the officer with a reasonable suspicion Dillman possessed, or her vehicle contained, drugs. It also noted the arresting officer clearly understood he lacked "reasonable suspicion/probable cause" (the district court's terminology) at the time he first observed Dillman's vehicle pulling away from the Kahle residence on May 22, 2015.  The court further determined, after detailed analysis of *State v. Marx*, 289 Kan. 657, 215 P.3d 601 (2009), that the incidental and minimal lane breach observed by Officer McCann was insufficient to support even a pretextual traffic stop. Accordingly, the district court ruled that all evidence seized as a result of the illegal stop was suppressed.

In its appellate brief, the State makes only passing reference to the ruling regarding the initial stop, indicating the parties had not raised any issue regarding the validity of the pretextual traffic stop. Dillman adopted the district court's analysis in her appellate brief, although that position had not been argued before the district court. "When a trial court chooses to address an issue not raised by the parties, an appellate

7

court may address the issue as well." *State v. Mullen*, 304 Kan. 347, Syl. ¶ 1, ___P.3d___, 2016 WL 1612920 (2016).

Our standard of review is well established:

"In reviewing a district judge's ruling on a motion to suppress, an appellate court applies a bifurcated standard. The appellate court accepts the factual findings of the district judge if they are supported by competent evidence having some substance. The appellate court exercises plenary review over legal conclusions based upon those findings, including the ultimate ruling on the motion. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007); see *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). The prosecution bears the burden of proving a search or seizure to be constitutional by a preponderance of the evidence. *State v. Pollman*, 286 Kan. 881, 886, 190 P.3d 234 (2008) (allocation of burden; quantum of evidence); *Thompson*, 284 Kan. at 772 (allocation of burden)." *State v. Dugan*, 47 Kan. App. 2d 582, 586-87, 276 P.3d 819 (2012).

*Stale Information*

We first consider the district court's legal conclusion that the information from Haley was stale. The district court found the record at the hearing did not establish specifically when Haley had been interviewed; however, the record clearly establishes the interview with Haley had taken place in April 2015, only 4 or 5 weeks prior to Dillman's arrest on May 22, 2015. In fact, the district court specifically referred to April 16 at one point in the record. The finding of lack of specificity is not supported by the evidence.

Information is stale when it no longer indicates a fair probability that evidence of a crime will be found at a particular place. *State v. Hensley*, 298 Kan. 422, Syl. ¶ 1, 313 P.3d 814 (2013). Whether information is stale is to be determined by the facts and circumstances of each case. 298 Kan. 422, Syl. ¶ 2. The timeliness and relevance of

8

information cannot be judged solely on the passage of time. *State v. Bottom*, 40 Kan. App. 2d 155, 163-64, 190 P.3d 283 (2008), *rev. denied* 287 Kan. 766 (2009).

The district court emphasized the lack of written records or logs regarding surveillance of the Kahle residence and suggested that the lack of recent surveillance was part of a totality of circumstances which would not have led a reasonable person to believe that Dillman possessed, or her vehicle contained, drugs on May 22, 2015. Curiously though, the district court found that Officer McCann just happened to see Dillman's car—the exact little red Aveo described by Haley—leaving the Kahle residence—the exact location described by Haley—at a time of the morning when Haley had informed officers that Dillman would frequently leave after doing her drug business. This leads us to the conclusion that the information provided by Haley was verified and, after only a few weeks, was not stale. That information, together with Officer McCann's observation, was sufficient to provide a trained law enforcement officer with a reasonable suspicion that something illegal was afoot.

The district court focused on Officer McCann's testimony that he believed he lacked "reasonable suspicion/probable cause" (the district court's terminology) at the time he first observed Dillman's vehicle leaving Kahle's residence. But Officer McCann would not have been required to have probable cause to investigate the red car and its occupants. The question is, whether under the totality of circumstances a reasonably cautious law enforcement officer would have developed a reasonable suspicion of illegal conduct. This is an objective standard and is not wholly dependent upon the subjective impression expressed by a particular officer. Whether such reasonable suspicion exists is a question of law. *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007).

Although reasonable suspicion is not a high bar, it does require an officer to articulate "[s]omething more than an unparticularized suspicion or hunch." *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998). Reasonable suspicion is determined

in the context of whether the totality of circumstances justifies detention: "The court makes its determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances." *State v. Walker*, 292 Kan. 1, Syl. ¶ 6, 251 P.3d 618 (2011). Here, Officer McCann testified to his training and experience. He was involved, along with other officers, in an ongoing drug investigation. He observed the very activity disclosed by the informant Haley, information which we have already concluded was not stale. Under these circumstances, a reasonable police officer had adequate reasonable suspicion to detain the vehicle and its occupants for further investigation.

In an abundance of caution, Officer McCann waited until he observed what he believed to be a traffic infraction before stopping the red Aveo. A stop based on an officer's belief that a traffic infraction has occurred has long been held to establish the reasonableness of the initial stop. See *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). Here, the dashcam video clearly showed that the red Aveo briefly crossed the fog line when making a turn. The district court analyzed this evidence in the light of *Marx*, 289 Kan. 657, and determined, as a matter of law, the brief crossing was an incidental and minimal lane breach which did not justify a traffic stop. We need not, however, address the import of that conclusion since we have already reached the conclusion that Officer McCann had sufficient reasonable suspicion to stop the vehicle even in the absence of any potential traffic infraction. In the context of a valid stop based on reasonable suspicion of illegal drug activity, Dillman did not show the stop was unduly prolonged so as to violate her constitutional rights.

The district erred in determining the initial stop of the vehicle was illegal. The evidence should not have been suppressed on this basis.

*Extension of the Stop*

Once Officer McCann approached the vehicle, the information provided by the occupants again corresponded with Haley's information. The car was owned by Ashley Dillman—"Dilly"—who fit the physical description Haley provided. The car was being driven by Nicholas Ward—"Nicholas"—the usual practice Haley described. Ward disclosed they had stayed at Kahle's house overnight and were returning to Wichita. These verifications added to Officer McCann's reasonable and articulable suspicion of potential criminal activity. See *State v. Coleman*, 292 Kan. 813, 816-17, 257 P.3d 320 (2011). An officer may expand the direction of the initial investigative detention when the initial responses of the detainee and the other circumstances relating to the stop give rise to suspicions unrelated to the traffic stop. The officer may then graduate the police response to the demands of the situation. See *State v. Morlock*, 289 Kan. 980, 986-89, 218 P.3d 801 (2009). Based on the nature of the information and the ongoing drug investigation, Officer McCann called for a backup officer to come to the scene.

Although the testimony and the facts shown in the video would indicate Officer McCann certainly took his time in verifying license, registration, and insurance information and writing up a warning citation before concluding the traffic stop, we cannot reach the legal conclusion the detention had been unreasonably extended at that point. Upon completion of the citation, the identification materials were returned to Ward, the driver, and he was advised that they were free to go insofar as the initial stop was concerned. Neither Officer McCann's nor Blackburn's patrol vehicles were blocking departure by the Aveo.

*The Consensual Encounter*

Upon completion of the traffic stop details, Officer McCann began to walk away from the passenger side of the car, but after a few steps he returned to the window and

11

asked Dillman if she would be willing to speak further with him privately. This was a reasonable request based on his articulable suspicion of the potential drug activity. Officer McCann advised Dillman that it was her choice to talk with him and that any conversation would be consensual. He then turned back toward his vehicle. A few seconds later, Dillman exited the red Aveo and walked unescorted back to the patrol vehicle and got in.

The video evidence discloses no overt show of authority or coercion indicating Dillman had not voluntarily consented to the additional questioning. Once in the car, Officer McCann explained the information he had, which Dillman further explained but did not deny. After being repeatedly advised that the encounter was consensual, Dillman remained in Officer McCann's vehicle and continued to converse with him. The evidence does not lead to any inevitable conclusion she was not free to terminate the encounter, nor does the totality of the circumstances indicate, at that point, a reasonable person would not feel free to disengage from the conversation. See *State v. McGinnis*, 290 Kan. 547, 553, 233 P.3d 246 (2010).

*The Search of Dillman's Car*

Eventually, after admitting she had shared drugs at Kahle's house the prior evening, Dillman mentioned she had a small amount in a bag in her car. However, she twice advised Officer McCann that she would rather they did not search the car. Dillman would argue that any subsequent consent to search was now coerced and illegal. But the search was not conducted pursuant to her consent, whether voluntary or coerced. The search was carried out because the information she had shared escalated the situation from reasonable suspicion to probable cause. Officer McCann now had information a crime was actually being committed by Dillman's possession of controlled substances. The officer's probable cause combined with the exigent circumstances the contraband

was in a readily mobile vehicle provided ground for a warrantless nonconsensual search. See *State v. Sanchez-Loredo*, 294 Kan. 50, 272 P.3d 34 (2012).

Dillman's motion to suppress had been grounded in her claim of a warrantless, nonconsensual search in violation of her rights under the Fourth Amendment. The State's response relied on the probable cause plus exigent circumstances exception to the warrant requirement and also argued Dillman had given voluntary consent to the search. There was no specific allegation that any incriminating information had been obtained in violation of Dillman's Fifth Amendment rights per *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966). The district court in its written ruling referred to Officer McCann as having violated Dillman's *Miranda* rights, but the parties have not addressed this comment on appeal. The appeal again focuses primarily on the issue of consent to the search; Dillman does not argue that any information upon which probable cause was based was improperly or coercively obtained during a custodial, investigative detention rather than in the voluntary, consensual encounter. Having determined consent to the search is immaterial to the legality of a search based on probable cause, we would similarly find the district court's reference to *Miranda* is not material to or determinative of the issues presented here.

The search of Dillman's vehicle, which disclosed the drugs and paraphernalia, was conducted pursuant to probable cause, and the district court erred in suppressing the evidence for lack of consent to the search.

*Reinstatement of the Case*

Since we have determined the district court erred in suppressing the evidence against Dillman, we are also constrained to find the dismissal of the case with prejudice was also a legal error. There being no other basis for the dismissal, we reverse the

judgment and reinstate the case for further proceedings in the district court consistent with this opinion.

Reversed and remanded with directions.