(315 P.3d 887)
No. 108,949

STATE OF KANSAS, *Appellee*, v. LANDON MARK PHILLIPS, *Appellant*.

Opinion filed December 13, 2013.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and BRUNS, JJ.

MALONE, C.J.: Landon Mark Phillips appeals his convictions of one count of possession of methamphetamine and one count of possession of drug paraphernalia. Phillips claims the district court erred in denying his motion to suppress evidence seized as a result of the search of his motel room. Specifically, Phillips argues that his encounter with law enforcement officers prior to the search constituted an illegal detention; thus, his consent to search was granted involuntarily. We conclude that Phillips' encounter with law enforcement started out as a voluntary encounter but evolved into an investigatory detention without reasonable suspicion of criminal activity. Because Phillips was unlawfully detained, his consent to search his motel room was rendered involuntary. Thus, we reverse the district court's decision denying Phillips' motion to suppress.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 25, 2012, Officer James Befort of the Lenexa Police Department was driving through the parking lot of a Comfort Inn while on routine patrol. Befort noticed two men, later identified as Phillips and William Dougherty, walking back and forth in the parking lot between the motel and a parked vehicle. The men had a number of plastic grocery bags lying on the ground near a side door to the motel, and Dougherty appeared to be searching through the bags. Befort later testified that he was curious about what the men were doing and if they were guests at the motel. He pulled up in his patrol car to the side door where the men were standing and parked approximately 10-15 feet from the motel. Befort did not activate his emergency lights or siren, but the patrol car's headlights were pointed in the direction of Phillips and Dougherty.

Befort approached Phillips and Dougherty with a flashlight as they stood by the side door. Befort struck up a conversation with the two men, asking what they were doing and what brought them to Lenexa. The men told Befort they were from Wyandotte County, but they had booked a room at the motel in order to get away and design a website. Befort asked for permission to conduct pat-down searches to look for weapons, and both men consented. Befort instructed Phillips to put his hands on his head and placed his hand on Phillips' back before conducting his pat-down search. Befort then asked for permission to search Phillips' pockets, which he granted. Befort did not find any weapons or anything illegal on Phillips' person or in his pockets.

While Befort was searching Phillips, Detectives Grisell and Sanderson of the Lenexa Police Department arrived on the scene in an unmarked vehicle with no sirens or emergency lights activated. Upon arrival, Grisell walked up to where Befort, Phillips, and Dougherty were standing by the motel door, while Sanderson remained back about 20-25 feet. Befort then patted down Dougherty, and after gaining consent, also searched Dougherty's pockets. Dougherty informed Befort before the search that he had a pocketknife on his person, which Befort removed and placed in his own

back pocket. Befort told Dougherty to remind him to return the knife later. Befort did not find anything illegal on Dougherty's person or in his pockets. By the time Befort completed the search of the men's pockets, the encounter had lasted approximately 5 minutes.

After he finished searching Dougherty, Befort told him that he wanted to talk to him, and Befort motioned for Dougherty to follow him 5-10 feet away to a grassy area between the motel and the sidewalk. Phillips remained standing by the motel door next to Grisell. Befort inquired whether Dougherty had anything illegal in his vehicle which was parked in the motel parking lot, and Dougherty said no. Befort then asked Dougherty if he was addicted to anything or did drugs, to which Dougherty responded that he had smoked marijuana when he was younger. Befort asked several times whether Dougherty used any other drugs, to which he responded no. Befort instructed Dougherty to pull up the sleeves of his sweatshirt, apparently to see if there were any signs of needle marks on Dougherty's arms.

Next, Befort asked permission to search Dougherty's vehicle, and Dougherty said yes. Befort asked if Dougherty had his car keys on him, and when Dougherty indicated that his keys were in one of the bags by the motel door, Befort told him to go get them. Befort followed Dougherty over to the bags where he retrieved his keys and handed them to Befort. Befort and Sanderson searched Dougherty's car while Phillips and Dougherty stood by the motel door. The officers did not find anything illegal in the vehicle.

Befort also ran warrant checks on Phillips and Dougherty, which yielded no results for either man. While running the checks, Befort continued to ask Phillips and Dougherty questions. Befort asked again what Phillips and Dougherty were doing at the motel, how the two men knew each other, whether either man had been arrested before, and whether they were meeting anyone else. Befort also asked to search a cell phone, which apparently belonged to Dougherty, and he did so after receiving permission.

About 18 minutes after Befort first approached Phillips and Dougherty, one of the detectives asked, "Mind if we just go through your room and make sure no one else is staying in there

with you real quick, and make sure nothing is going on in there and then we'll get out of your hair?" Befort later testified that Dougherty said. he had no problem with the officers searching the motel room. Befort could not recall whether Phillips gave explicit permission for the search, but he testified that Phillips was in "agreeance" with Dougherty. Befort then addressed Dougherty once more, saying, "Hey, don't let me forget before we get out of here to give you this back—this knife." Phillips and Dougherty picked up their plastic grocery bags from the ground and entered the motel through the side door, followed by all three officers.

Once inside the motel, Befort again asked if the men minded the officers looking around their motel room. While searching the motel room, the officers opened a drawer in a nightstand and found a black tray with traces of white residue and crystalline white rock on the tray. Based on his training and experience, Befort believed the substance to be methamphetamine. The officers also found a backpack lying on the floor of the motel room, which Phillips said belonged to him. Befort asked Phillips if he could open the backpack, and Phillips said yes. Inside the backpack, Befort found a plastic straw cut down to a few inches in length, which he believed was drug paraphernalia.

The officers arrested Phillips and Dougherty, and Befort later interviewed Phillips at the Lenexa detention center. Phillips eventually admitted that he had been smoking the methamphetamine found in the motel room. Subsequent lab testing at the Johnson County Sheriff's Office confirmed that the white residue and the white crystalline substance found in the motel room was methamphetamine.

The State charged Phillips with one count of possession of methamphetamine and one count of possession of drug paraphernalia. The State filed the same charges against Dougherty in a separate case. Prior to trial, both defendants filed a motion to suppress the evidence discovered during the search of the motel room as well as any subsequent statements. In his motion, Phillips argued that he was the subject of an unlawful detention and claimed that the officers had seized him without reasonable suspicion of criminal activity. Thus, Phillips argued that his consent to the search of the

motel room was involuntary. The State responded to Phillips' motion and argued that Phillips' entire encounter with the law enforcement officers was consensual and that his consent to the search was voluntary.

The district court held a joint hearing for both defendants on July 12, 2012. The State presented the testimony of Befort and also introduced an audio/video recording of the entire encounter at the motel which had been taken from Befort's patrol car. Phillips also testified at the hearing, but he did not dispute any of the evidence presented by the State. At the conclusion of the hearing, the district court denied both motions, finding that Phillips' and Dougherty's entire encounter with the law enforcement officers was consensual and that the two men voluntarily consented to the search of their motel room. Phillips later agreed to a bench trial conducted on stipulated facts. At trial, Phillips renewed his motion to suppress. The district court found Phillips guilty as charged. Phillips timely appealed his convictions.

## DID THE DISTRICT COURT ERR IN DENYING PHILLIPS' MOTION TO SUPPRESS?

On appeal, Phillips claims the district court erred in denying his motion to suppress. Specifically, Phillips argues that his encounter with the law enforcement officers prior to the search of the motel constituted an unlawful detention without reasonable suspicion of criminal activity. Phillips argues that because he was unlawfully detained, his consent to search the motel room was rendered involuntary. Thus, Phillips argues that the evidence found in the motel room was unlawfully seized and his statements at the detention center must be suppressed as fruit of the poisonous tree.

The State contends that Phillips' entire encounter with the law enforcement officers was consensual. Thus, the State argues that Phillips was never unlawfully detained and that his consent to the search of the motel room was voluntary.

In reviewing the granting or denial of a motion to suppress evidence, appellate courts use a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence.

The ultimate legal conclusion is reviewed using a de novo standard. *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013). The parties agree that the facts in this case are uncontested. When the material facts to a district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. 296 Kan. at 485.

The State bears the burden of proof for a suppression motion. The State must prove to the district court the lawfulness of the search and seizure. K.S.A. 22-3216(2); *State v. Morlock*, 289 Kan. 980, 985, 218 P.3d 801 (2009). Any warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011). Here, the State is asserting Phillips' consent to the search as the exception to the warrant requirement. The State has the burden of establishing the scope and voluntariness of the consent to search. *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 (2009).

As a preliminary matter, the State raises two procedural arguments as to why we should not address the merits of Phillips' claims on appeal. First, the State contends that Phillips is arguing for the first time on appeal that his consent to the search of his motel room was not voluntary. The State asserts that Phillips' motion to suppress only argued that he was the subject of an investigatory detention and the issue of consent was not presented to the district court and should not be considered for the first time on appeal.

Generally, issues not raised before the district court cannot be raised on appeal. *State v. Johnson*, 293 Kan. 959, 964, 270 P.3d 1135 (2012). The State is correct in its assertion that Phillips' written motion to suppress argued that he was the subject of an investigatory detention, not a voluntary encounter. However, Phillips' motion went on to argue that during his encounter with law enforcement, he "did not feel free to leave or decline the officer's request for search because he was detained by 3 officers for more than 20 minutes." At the hearing, Phillips' counsel argued that "[i]f the Court does determine this was an investigatory detention, at

any point prior to the police entering the hotel room [the search] would have been non-consensual and the evidence should be suppressed." The district court's ruling on the motion to suppress clearly addressed the issue of consent. Thus, we conclude the issue is properly preserved for appeal.

Second, the State argues that even if Phillips prevails on his consent issue, he is not entitled to any relief because the issue of Dougherty's consent to search has not been briefed. The State contends that this point is significant because Phillips can only prevail if both his consent and Dougherty's consent to search are deemed involuntary. The State points out that Dougherty told Befort that he had rented the motel room with Phillips and he actually possessed the key; thus, he had apparent authority to consent to a search of the room. The State asserts that under the apparent authority rule, a consent to search is valid when the facts available to the officer would warrant a person of reasonable caution to believe that the consenting party had authority over the premises to be searched. *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990).

The State did not raise the "apparent authority" argument in district court, and thus, we should not consider the argument for the first time on appeal. *Johnson*, 293 Kan. at 964. In any event, the argument is inapplicable here. The district court held a joint suppression hearing for both Phillips and Dougherty, and both defendants argued that they were unlawfully detained by the law enforcement officers. Phillips and Dougherty were subjected to the same police conduct as part of the encounter in the motel parking lot. If the detention was unlawful as to Phillips, it also was unlawful as to Dougherty, rendering his consent to the search of the motel room involuntary. Thus, we will address the merits of Phillips' claims on appeal.

We begin by examining the applicable constitutional provisions. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas Constitution Bill of Rights contains similar language and "provides protection

identical to that provided under the Fourth Amendment to the United States Constitution." *State v. Morris*, 276 Kan. 11, 17, 72 P.3d 570 (2003).

Kansas courts recognize four types of police-citizen encounters. The first type is a voluntary encounter, which is not considered a seizure under the Fourth Amendment. *State v. Lee*, 283 Kan. 771, 774, 156 P.3d 1284 (2007). The second type is an investigatory detention or a *Terry* stop, in which an officer may detain any person in a public place if the officer reasonably suspects that the person is committing, has committed, or is about to commit a crime. See K.S.A. 22-2402(1); *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The third type is a public safety stop, in which an officer may approach a person to check on his or her welfare when the officer can articulate specific facts indicating a concern for the public's safety. See *State v. Vistuba*, 251 Kan. 821, 824, 840 P.2d 511 (1992). The fourth type of encounter between law enforcement officers and citizens is an arrest. See K.S.A. 22-2401.

The only issue on appeal is whether Phillips' encounter with the law enforcement officers was voluntary as opposed to a detention or a seizure. The delineation between a voluntary encounter and an investigatory detention is narrow and depends on the totality of the circumstances. Both instances involve contact between a law enforcement officer and a citizen, usually precipitated by the law enforcement officer. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . ." *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983).

A voluntary encounter is not considered a seizure and does not require a law enforcement officer to have reasonable suspicion of criminal activity. *Lee*, 283 Kan. at 774-75. Conversely, a person is seized when there is a show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that he or she is not free to leave and the person submits to the show of authority. *Morris*, 276 Kan. at 18-19. A

seizure requires a law enforcement officer to have reasonable suspicion of criminal activity. 276 Kan. at 17.

Law enforcement interaction with a person is consensual, not a seizure, if under the totality of the circumstances the officer's conduct conveys to a reasonable person that he or she is free to refuse the officer's requests or otherwise end the encounter. *State v. McGinnis*, 290 Kan. 547, 552, 233 P.3d 246 (2010). There are several objective factors that courts may consider to help determine whether a police-citizen encounter is voluntary or an investigatory detention, including the presence of more than one officer, the display of a weapon, physical contact by the officer, use of a commanding tone of voice, activation of sirens or flashers, a command to halt or to approach, and an attempt to control the ability to flee. 290 Kan. at 553. But in applying the totality of the circumstances test in a Fourth Amendment context, no one factor is legally determinative, dispositive, or paramount. 290 Kan. at 553.

Phillips initially argues that his entire encounter with Befort constituted an investigatory detention, relying on our Supreme Court's decision in *Morris*. In that case, two sheriff's officers in a patrol car activated the emergency lights and approached Morris as he sat in his pickup, which was legally parked in a public place. The Supreme Court concluded that Morris' encounter with the sheriff's officers was not voluntary but rather occurred under a show of authority. The Supreme Court pointed to the officers' conduct—the activation of the emergency lights in a remote area off a roadway—as a show of authority which would communicate to a reasonable person that there was an intent to intrude upon freedom of movement. 276 Kan. at 20.

While Befort did not activate his emergency lights in the instant case, Phillips argues that Befort parked his patrol car in a way so that his headlights shone on Phillips and Dougherty. Phillips points out that Befort approached with his flashlight on, shining directly on the men and their belongings. Phillips argues that Befort's actions were a show of authority, that Phillips and Dougherty submitted to that show of authority, and that the initial encounter was a seizure.

We reject Phillips' claim that his encounter with Befort was a detention or seizure at the outset. A seizure does not occur simply because a law enforcement officer approaches an individual in a public place and asks a few questions, including a request for identification. *State v. Moralez*, 297 Kan. 397, 405, 300 P.3d 1090 (2013). Here, when Befort approached Phillips, there was no application of physical force or a show of authority which would communicate to a reasonable person that a seizure had occurred. Befort had a right to use a flashlight and to keep his vehicle headlights on because it was night and he wanted to be able to clearly see the two men in the parking lot. Also, Befort was attempting to activate the equipment in his patrol car to record the encounter. But Befort did not block or physically restrain the two men from going about their business in the parking lot. Under the totality of the circumstances, when Befort initially approached Phillips in the parking lot, a reasonable person would have felt free to decline Befort's requests for information or to otherwise end the encounter.

Alternatively, Phillips argues that regardless of whether the encounter began as a detention, it evolved into a detention at some point prior to the time the men were asked for permission to search their motel room. Phillips contends that at the time the men were asked for consent to search their room, a reasonable person would not have felt free to decline the officers' requests or otherwise terminate the encounter. The State responds by arguing that Phillips' entire encounter with the law enforcement officers was consensual.

The determination of whether a reasonable person would feel free to terminate an encounter or refuse to answer questions is fact driven. *McGinnis*, 290 Kan. 547, Syl. ¶ 6. But here, both parties agree that the facts are undisputed. In fact, the entire encounter between Phillips and the law enforcement officers was recorded, and the DVD was presented as evidence at the suppression hearing and is included in the record on appeal. The ultimate legal conclusion drawn from undisputed facts, *i.e.*, whether a reasonable person would feel free to refuse the officer's requests or to otherwise terminate the encounter, is reviewed under a de novo standard. 290 Kan. at 552.

As the State points out, there are several factors in this case that weigh in favor of concluding that Phillips' entire encounter with the law enforcement officers was voluntary. Befort did not activate his emergency lights or siren. None of the officers drew their weapons during the encounter. The audio tape reflects that the officers spoke with Phillips and Dougherty in a conversational tone of voice; they were polite throughout the encounter. The officers never blocked or physically restrained Phillips and Dougherty from trying to leave the parking lot.

But as Phillips counters, there are many factors in this case that weigh in favor of concluding that at some point, the encounter between the two men and the law enforcement officers evolved into an investigatory detention. First, within a few minutes after the encounter was initiated, three officers were on the scene in the parking lot. The presence of more than one officer is a factor in determining whether there was a coercive show of authority. *McGinnis*, 290 Kan. at 553; *Lee*, 283 Kan. at 775.

Second, the encounter lasted for about 18 minutes before the officers asked if they could search the motel room. Befort initially approached Phillips and Dougherty in the parking lot, struck up a conversation, patted them down for weapons, and searched their pockets with consent. After 5 minutes, it should have been reasonably clear to Befort that the two men were not engaged in any criminal activity in the parking lot. As the district judge candidly stated in ruling on the suppression motion, "I suppose a lot of officers would have quit at that point." Although the encounter began as voluntary, after 18 minutes of continuous questioning by the officers, it is unlikely that a reasonable person would have felt free to end the encounter without the officers' permission.

Third, as Phillips argues, the nature of the encounter resembled an investigatory detention. Within a minute of arriving, Befort began questioning the men about illegal activity, including contraband on their persons. Befort patted down both men for weapons, and then he obtained consent to search their pockets and found nothing illegal. Befort examined Dougherty's arm for needle marks and later searched his cell phone. Befort requested permission to search Dougherty's vehicle and directed him to obtain the keys

from one of the grocery bags. The officers did not find anything illegal in the vehicle. Befort also ran warrant checks on Phillips and Dougherty, which yielded no results for either man. After about 18 minutes, the officers finally requested permission to search the motel room. Clearly the entire encounter between the law enforcement officers and the two men was investigatory in nature.

Fourth, a reasonable person would not feel free to leave when a police officer had seized personal property, as Befort did with Dougherty's pocketknife, and held onto it during the entire encounter. In *Moralez*, 297 Kan. at 408, the court found the defendant was "seized" when a law enforcement officer took possession of his identification and retained it while running a check for outstanding warrants. Here, the district judge observed at the suppression hearing that Befort's retention of the pocketknife was "not the same as taking someone's driver's license." Nevertheless, the prolonged retention of a person's personal effects is a factor that weighs in favor of concluding that a person has been seized. *State v. Thompson*, 284 Kan. 763, 811, 166 P.3d 1015 (2007).

Fifth, Phillips emphasizes that at no point did the officers tell Phillips and Dougherty that they were free to leave, free to refuse to answer questions, or free to refuse consent. While a law enforcement officer is not required to tell a citizen that he or she is free to leave during a voluntary encounter, the officer's failure to do so is another factor to be considered under the totality of the circumstances. *State v. Young*, 37 Kan. App. 2d 700, 709, 157 P.3d 644 (2007).

Finally, Phillips focuses on two statements made by the officers during the 18 minutes of questioning. The first statement was when Befort told Dougherty that he would return the pocketknife when the encounter was completed. Phillips asserts that a reasonable person would infer from this statement that the encounter was not completed until Befort returned the pocketknife. Second, the officers asked for consent to search the motel room and stated "then we'll get out of your hair." Again, Phillips asserts that a reasonable person would infer from this statement that the officers would not let Phillips and Dougherty go about their business until they consented to the search of their room.

The State bears the burden of proving the lawfulness of any search and seizure. *Morlock*, 289 Kan. at 985. Here, under the totality of the circumstances, no reasonable person would have felt free to end the encounter or to refuse the officers' request when they asked for consent to search the motel room. What began as a voluntary encounter between Befort and the two men in the parking lot evolved into an investigatory detention prior to the time that the officers asked for consent to search the motel room. The State concedes that the officers had no reasonable suspicion of criminal activity until the drugs and paraphernalia were found inside the motel room; thus, the detention in the motel parking lot was unlawful.

The State makes no attempt to argue that any taint caused by the unlawful detention was purged through attenuation such that Phillips' consent to the search of the motel room and his later statements to Befort were free and voluntary. Because Phillips was unlawfully detained when he allowed the officers to search his motel room, his consent to search was rendered involuntary. See *State v. Smith*, 286 Kan. 402, 419, 184 P.3d 890, *cert. denied* 555 U.S. 1062 (2008). We conclude the evidence found in the motel room was unlawfully seized and Phillips' later statements at the detention center are inadmissible as the "fruit of the poisonous tree." See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Thus, the district court erred in denying Phillips' motion to suppress.

Reversed and remanded.