NOT DESIGNATED FOR PUBLICATION

No. 110,131

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DIXIE DAUGHERTY,
*Appellant.*

MEMORANDUM OPINION

Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed December 18, 2015. Reversed and remanded.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Amber R. Norris*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., MCANANY and BUSER, JJ.

*Per Curiam*: Andover police detained Dixie Daugherty and two other women at the Andover Express Inn as part of their investigation of Lance Greathouse, who had been staying in the same room before he was apprehended for suspected forgery. Forty-five minutes after initially detaining Daugherty, police read her the *Miranda* rights and questioned her about any belongings she had in the room. She admitted she had a methamphetamine pipe in a black suitcase bag. The police included that information in a search warrant for the room and later found a black zipper pouch that contained drug paraphernalia. Daugherty moved to suppress this evidence, but her motion was denied, and she was found guilty of possession of drug paraphernalia, a class-A nonperson

misdemeanor, and possession of methamphetamine, a severity-level-4 felony, at a bench trial on stipulated facts.

On appeal, Daugherty argues that her statements were obtained in violation of her rights under the Fourth Amendment to the United States Constitution, which protects us all from unreasonable searches and seizures. While police had reason to believe they would find evidence of forgery committed by Greathouse in the motel room, they had no evidence that Daugherty had any connection to that evidence or to any forgeries—she simply shared a room with Greathouse and two others. In a similar situation, the United States Court of Appeals for the Fourth Circuit found that police could not seize a person who was merely present unless they were concerned for officer safety or needed to prevent the destruction of evidence. *United States v. Watson*, 703 F.3d 684, 693 (4th Cir. 2013). We find *Watson* persuasive and conclude that the officers' detention of Daugherty here was unreasonable. Accordingly, statements she made while improperly in custody may not be used as evidence in this case.

The State argues that several items seized would inevitably have been discovered, even without her statements, and thus should still be admitted. The record before us does not allow us to determine that question, so we leave it to the district court to consider that issue on remand.

FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2011, at around 5:45 p.m., officers from the Andover Police Department knocked on the door of Room 224 of the Andover Express Inn as part of their investigation of Greathouse in a forgery case. The room was registered to Greathouse, and officers found Daugherty and two other women inside. They asked the women to step outside and searched the room to make sure no one else was there. Sergeant Ben Graber and Officer Mickey Farris told the women that "a search warrant

2

was in progress" and that they would not be allowed back in the room and were not to remove anything. In actuality, another officer didn't start drafting the search-warrant request until around 6 p.m., and a warrant wasn't issued and executed for several hours. The officers on the scene directed the women to wait in the lobby area while they secured the room in anticipation of getting the search warrant. The women obeyed the directions, and although the women were not explicitly told so, they were not free to leave.

Graber and Farris said they did not have any information that Daugherty was involved in Greathouse's crimes when they first detained her, but Graber did have information that one of the other women, Stephanie Roberts, was involved. Graber said Daugherty was detained because she shared a hotel room with Greathouse.

At about 6:30 p.m., Officer Brandon Stewart arrived on the scene and began interviewing the women in his police car, starting with Daugherty. Stewart said that at the time, he knew one of the three women was involved with Greathouse but admitted he did not ask any other officers on the scene which woman was suspected of involvement. He read Daugherty her *Miranda* rights, and she agreed to speak with him. He asked her if any of the property in the room was hers. Daugherty told him that she had a meth pipe in a black suitcase-type bag. The interview lasted until approximately 6:51 p.m. Stewart then called Captain Randy Coffman, who was in the process of drafting the proposed search warrant, to have her include information about the meth pipe.

The police obtained and began executing the search warrant around 10:40 p.m. According to Coffman, only one sentence in the six-page warrant contained the information about the meth pipe. During the search, the police found a black zipper pouch in the suitcase that Daugherty used; the pouch contained an electronic scale, a syringe, a spoon, plastic bags (one of which showed Daugherty's fingerprints), and a black metal cylinder with methamphetamine residue. They also found multiple gift cards and credit cards, some with the names Amy Bell and Amy Spencer.

Daugherty was charged with possession of drug paraphernalia, a class-A nonperson misdemeanor, and possession of methamphetamine, a severity-level-4 felony. She moved to suppress the evidence and statements made to Officer Stewart, arguing that the officers lacked probable cause to detain her; therefore, she argued, the detention was an unreasonable seizure in violation of her Fourth Amendment rights, and any resulting evidence should not be admitted.

The district court denied Daugherty's motion because it found the seizure was legal and the search was based on a valid search warrant, relying on the holdings in *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 969 L. Ed. 2d 340 (1981), and *Muehler v. Mena*, 544 U.S. 93, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005), in which the U.S. Supreme Court found that individuals could be detained while police execute a search warrant. Daugherty urged the court to consider that in *Summers* and *Mena*, police had a valid search warrant but that in her case, the police were still seeking the search warrant when she was detained; the district court found the distinction unpersuasive.

On September 14, 2012, Daugherty and her attorney attended the pretrial conference. Her attorney informed the district court that in accordance with an agreement with the State, they would have a trial on stipulated facts and would not need a jury trial. The judge scheduled the bench trial for October 2, 2012.

At the start of the bench trial, the district court noted that "the defendant has waived her right to a jury trial at this time." The facts Daugherty agreed to included the discovery of the methamphetamine pipe and the contents of the black zipper pouch; the fact that police detained Daugherty before obtaining a search warrant; Daugherty's admission to owning a methamphetamine pipe when questioned during the detention; and lab results that the black metal cylinder tested positive for methamphetamine and that Daugherty's fingerprints were on one of the plastic bags. The district court asked

4

Daugherty personally, "Do you understand that by stipulating to these facts that I'm going to make a finding based on these facts you've reviewed and that I may very well find you guilty of this offense, because you've waived your jury trial and you're stipulating to these facts?" Daugherty answered, "Yes." The district court then found her guilty of possession of methamphetamine and drug paraphernalia.

In January 2013, Daugherty was sentenced to 30 months in prison for possession of methamphetamine, 12 months in jail for possession of drug paraphernalia to run alongside the other charge, and 12 months of postrelease supervision. Daugherty has appealed to this court.

ANALYSIS

Daugherty argues that she was illegally seized in violation of the Fourth Amendment's protection against unreasonable search and seizure because the police did not have probable cause or reasonable suspicion to detain her, nor did they have a search warrant to justify detaining her. She asserts that the district court erred in denying her motion to suppress evidence as the statements she made to Officer Stewart were during her illegal seizure and therefore should have been suppressed. The State argues that police had reasonable suspicion to detain Daugherty, so her Fourth Amendment rights were not violated, and the district court properly denied Daugherty's motion to suppress.

When reviewing a motion to suppress evidence, we review the factual basis of a district court's decision for substantial evidence but review its legal conclusions independently, without any required deference. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). If the facts are undisputed, we have unlimited review of the district court's suppression decision. *State v. Pettay*, 299 Kan. 763, 768, 326 P.3d 1039 (2014). The State has the burden to prove that a challenged search or seizure was lawful.

5

*State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). Here, the relevant facts are undisputed, so we do not owe any deference to the district court's determinations.

Both the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights provide each person the right to be safe from unreasonable seizures. 299 Kan. at 296-97 (citing *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 [2007]). In analyzing whether the district court erred in denying the motion to suppress, we must first determine whether a seizure occurred and if so, whether it was reasonable, as the Fourth Amendment only prohibits unreasonable seizures. 299 Kan. at 297.

A seizure occurs "'when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *State v. Moralez*, 297 Kan. 397, 404, 300 P.3d 1090 (2013) (quoting *State v. Morris*, 276 Kan. 11, 17, 72 P.3d 570 [2003]). A seizure by a show of authority occurs when a reasonable person would not feel free to leave given the circumstances and submits to the show of authority. 297 Kan. at 404. The parties generally agree that Daugherty was seized but disagree about whether the seizure was legal. The district court likewise found that a seizure occurred. The record shows that Daugherty was seized, as police told her that a search warrant was in progress and directed her to wait in another location, and she submitted to that show of authority by complying with the directions; during this time, Sergeant Graber testified, she was not free to leave.

Having determined that Daugherty was seized, we must then determine whether her seizure was reasonable. Whether a seizure is reasonable requires balancing the public interest and the individual's right to be free from arbitrary interference by law enforcement. *Reiss*, 299 Kan. at 300 (citing *Thompson*, 284 Kan. at 772). Generally, any warrantless seizure is unreasonable unless it falls within one of the recognized exceptions. *State v. Phillips*, 49 Kan. App. 2d 775, 781, 315 P.3d 887 (2013), *rev. denied*

6

299 Kan. 1273 (2014). One exception is a brief, investigatory detention, also known as a *Terry* stop; they are constitutionally permitted so long as an objective police officer could articulate a reasonable suspicion that the person detained has committed, is committing, or is about to commit a crime. *Moralez*, 297 Kan. at 405; see also K.S.A. 22-2402(1) (allowing an officer to stop any person in a public place when the officer has reasonable suspicion that the suspect is committing, has committed, or is about to commit a crime). The reasonable-suspicion standard requires a "minimum level of objective justification," which is less demanding than probable cause but more than just a hunch. *State v. Johnson*, 293 Kan. 1, Syl. ¶ 4, 259 P.3d 719 (2011).

Daugherty argues that police had no reasonable suspicion to justify initially detaining her. She cites *State v. Morris*, 276 Kan. 11, Syl. ¶ 7, 72 P.3d 570 (2003), for the proposition that mere proximity to a criminal suspect does not justify detention unless the officer has independent reasonable suspicion that the person found near the suspect was involved in criminal activity too. See also *State v. Williams*, No. 106,239, 2012 WL 5392098, at *5-6 (Kan. App. 2012) (unpublished opinion) (no reasonable suspicion to stop defendant merely for leaving suspected drug house). The State argues that the detention here was based on reasonable suspicion of criminal activity given that Daugherty was in the exact hotel room to be searched and shared the room with the initial suspect.

The State relies on the principles set forth in *Michigan v. Summers*, 452 U.S. 692, and *Muehler v. Mena*, 544 U.S. 93, to support its claim that Daugherty was not illegally seized. In *Summers*, the United States Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705. In fact, "[a]n officer's authority to detain incident to a search is categorical" and does not require other justification for the seizure. *Muehler*, 544 U.S. at 98 (citing *Summers*, 452 U.S. at 705 n.19). The Supreme Court noted that the search warrant was

7

"[o]f prime importance" and "provide[d] an objective justification for the detention . . . [because it] gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies detention of that occupant." *Summers*, 452 U.S. at 701, 703-04. The Court also said that the interests in preventing suspects from fleeing and in minimizing the risk of harm to officers and the destruction of evidence weighed in favor of finding the detention reasonable during the execution of a search warrant. 452 U.S. at 702-03.

The Court in *Summers* did not address whether police may seize an individual in circumstances *without* a warrant but noted "the possibility that comparable police conduct may be justified by exigent circumstances." 452 U.S. at 702 n.17. *Muehler* merely built upon the holding in *Summers* to allow police to use handcuffs on individuals who are found where the search warrant is being executed in the interest of police safety. 544 U.S. at 99; *State v. Jones*, No. 103,046, 2011 WL 5142982, at *6 (Kan. App. 2011) (unpublished opinion).

In Daugherty's case, of course, officers did *not* have a search warrant when they detained her. Given the cases' strong emphasis on the search warrant to justify a seizure, *Summers* and *Mena* do not control the result here.

The United States Supreme Court has also considered whether individuals can be detained while police get a search warrant. In *Illinois v. McArthur*, the defendant's wife told police that her husband had drugs underneath the couch in the trailer she and her husband shared. 531 U.S. 326, 329, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001). While one of the officers went to get a search warrant, the other prohibited the defendant from reentering the trailer unless accompanied by an officer until the search was completed. The Court determined that, given the circumstances, the seizure was not unreasonable because the police had probable cause to believe the trailer contained evidence of a crime, reasonably believed that the defendant would destroy evidence if not restrained,

8

attempted to balance privacy concerns by not searching the trailer or arresting the defendant before obtaining the warrant, and continued the seizure for only a limited period of time (2 hours) while obtaining the warrant. 531 U.S. at 331-32. Daugherty suggests that *McArthur* does not control here because police had no evidence or information that she was involved in any crimes and was detained solely because she was found in a hotel room that a suspect had rented or occupied.

Neither party has cited to a Kansas appellate ruling in a similar case. We will discuss two relevant cases from other jurisdictions in some detail, *State v. Vorburger*, 2002 WI 105, 255 Wis. 2d 537, 648 N.W.2d 829 (2002), and *United States v. Watson*, 703 F.3d 684, 690 (4th Cir. 2013).

In *Vorburger*, the Wisconsin Supreme Court found that a seizure was reasonable based on the principles articulated in *Summers* and *McArthur*. In that case, three people—Cory Cramer, Amerie Becker, and Bradley Vorburger—were detained by police as they were about to enter a motel room for which police were seeking a search warrant. Earlier in the day, the motel manager had detected a strong smell of marijuana in the room as soon as he entered it while checking to be sure the rooms at the motel had been properly cleaned. He found marijuana in the room, which was registered to Cramer, and called the police, who positioned themselves outside the room to secure it while getting a search warrant. The defendants were seized just after 9:20 p.m., but the search warrant wasn't signed by the judge until 9:34 p.m. and not executed until 10:17 p.m. Around 10:30 p.m., the police read Becker her *Miranda* rights and questioned her about drug use; she admitted to using and having marijuana at her apartment and consented to a search there, where police found cocaine.

The Wisconsin Supreme Court found there was reasonable suspicion to initially stop and detain Becker and Vorburger based on the fact that they were visiting a motel room that strongly smelled of marijuana at 9:20 p.m. on a Wednesday night. 2002 WI

9

105, at ¶¶ 44-45. The court justified the continued detention on the principles in *Summer* and *McArthur* regarding law enforcement's interest in minimizing risk to officers and preserving evidence while also recognizing the law's preference for warrants. 2002 WI 105, at ¶¶ 56-59. It ultimately found that the continued seizure was reasonable "because a search warrant was in the works and its execution was imminent, and because the police had articulable, reasonable suspicion for each of the people they detained." 2002 WI 105, at ¶ 69.

Daugherty argues that her case is "strikingly" similar to the facts in the second case, *Watson*. There, police observed a suspected drug transaction and arrested an individual who lived on the second floor of a nearby building, leading them to seek a search warrant for the building. In the meantime, other officers entered the building to secure it by detaining everyone inside, which included the defendant, who worked at the convenience store on the first floor and lived on the second floor. Watson was detained for 3 hours while police obtained the search warrant, even though officers had no information linking him to any criminal activity. Upon getting the search warrant, the police advised Watson of his *Miranda* rights and asked him about evidence found in the back room on the second floor; Watson told police that he lived in the front room, where police subsequently found a revolver and ammunition.

The court held that the seizure was unreasonable because there was no search warrant at the time of detention as in *Summers*, no probable cause or even reasonable suspicion of criminal activity, and no reasonable basis to believe that Watson would destroy or hide evidence to justify detaining him as in *McArthur*. 703 F.3d at 691-93. The connection between the person detained and the criminal conduct underlying the search warrant was remote: Watson merely worked in a convenience store in another part of the building, and the court noted that he "lack[ed] any specific connection to suspected criminal activity." 703 F.3d at 692 & n.10, 693. Daugherty was not as far removed from

the crime—she was found in the same motel room for which police were seeking a warrant. Even so, she had no specific connection to the suspected forgery.

Unlike in *Vorburger*, where even the defendant conceded that officers had reasonable suspicion to believe he had committed or was about to commit a crime, 2002 WI 105, at ¶ 44 (noting Vorburger didn't dispute reasonable suspicion to believe he was about to commit a crime entering a hotel room that smelled strongly of marijuana), police in our case did not have probable cause to believe that Daugherty had done or would do anything wrong. Nor could Daugherty have destroyed evidence that was in the room; officers were preventing anyone from entering. No officers suggested that Daugherty represented a threat to their safety; the officers didn't handcuff or restrain her while they kept her in the motel lobby. She was seized without being given an option to leave, and the officers did not have a search warrant (or the imminent prospect of one) at the time. We conclude that her seizure in these circumstances violated her right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights.

Generally, when a search or seizure is illegal, the exclusionary rule "prevent[s] the use of unconstitutionally obtained evidence in a criminal proceeding" to deter illegal conduct by the State. *State v. Wilburn*, 50 Kan. App. 2d 663, 677, 332 P.3d 199 (2014), *rev. denied* January 15, 2015. The exclusionary rule extends to the "fruit" of the illegal seizure, including evidence directly and indirectly obtained as a result of information learned from the unlawful seizure. 50 Kan. App. 2d at 677. Therefore, under the exclusionary rule, if the seizure was unreasonable, then Daugherty's incriminating statements to Officer Stewart and the resulting evidence should have been suppressed. But the law recognizes exceptions to the exclusionary rule, including when police officers' actions are somewhat removed from discovery of the evidence (attenuation) and when discovery would have been inevitable.

11

Under the attenuation doctrine, "'the poisonous taint of the unlawful search or seizure dissipates when the connection between the unlawful police conduct and the challenged evidence becomes attenuated.'" *State v. Jefferson*, 297 Kan. 1151, 1162, 310 P.3d 331 (2013) (quoting *State v. Martin*, 285 Kan. 994, 1003, 179 P.3d 457, *cert. denied* 555 U.S. 880 [2008]). When evidence would not have been uncovered but for the illegal actions of the police, courts ask whether the police exploited the illegal action to discover the evidence or instead discovered it by means distinguishable enough that it is no longer tainted. *Moralez*, 297 Kan. at 409. To answer that question, courts consider how much time has passed between the illegal action and acquiring the evidence, any intervening circumstances, and the purpose and flagrancy of the official misconduct. 297 Kan. at 410. No one factor is controlling, and other factors may also be relevant. 297 Kan. at 410.

The State argues that if the search was illegal, the evidence was still properly admitted because police acquired the evidence after reading Daugherty her *Miranda* rights, thus reducing the effect of the illegal seizure on obtaining it. Daugherty contends that the attenuation doctrine does not apply because there were no intervening circumstances, virtually no time passed between the illegal seizure and her statements, and *Miranda* warnings alone do not reduce the taint of an illegal seizure. Because the district court found the search legal, it never made any findings regarding whether the taint was attenuated, which is usually a question of fact. But this court may determine whether the taint was attenuated if the record is sufficient to make that determination. *State v. Wendler*, 47 Kan. App. 2d 182, 200-01, 274 P.3d 30 (2012). Here, Daugherty's incriminating statements were made during the illegal detention and were immediately used in the search warrant. The fact that Daugherty was given the *Miranda* warning is a relevant factor in determining attenuation, but as Daugherty asserts, it is not the sole factor this court must consider. *Brown v. Illinois*, 422 U.S. 590, 603, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *Moralez*, 297 Kan. at 410. There do not appear to be any other intervening circumstances. Given the lack of time between the seizure and the

incriminating statements, we conclude that the attenuation doctrine does not apply in this case.

Another exception to the exclusionary rule is the inevitable-discovery doctrine. Under the inevitable-discovery doctrine, if the prosecution can establish by a preponderance of the evidence (more likely than not) that unlawfully obtained evidence would have ultimately or inevitably been discovered by lawful means, the exclusionary rule does not apply, and the evidence is admissible. *Wilburn*, 50 Kan. App. 2d at 682-83.

The State argues that even if Daugherty's statements were suppressed, officers would have lawfully found the drug paraphernalia during the search of the room, as they would have opened the bag while searching for evidence of the forgery. Daugherty argues that because the unlawfully obtained statement was used as a basis for the search warrant, the State can't show by a preponderance of the evidence that the items would have been found, as police had no indication they should search for evidence of drug use.

Again, the district court made no applicable findings or determinations. Kansas courts have found—with regard to other issues—that remand is unnecessary when the record on appeal is sufficient for an appellate court to decide the issue; this principle should apply here too. See *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 (2000) (claim of ineffective assistance of counsel); *Wendler*, 47 Kan. App. 2d at 200-01 (attenuation).

In applying the inevitable-discovery doctrine, the court is not permitted to speculate about all possible series of events leading to discovery of evidence but instead must show "'a reasonable probability that the evidence would inevitably be discovered through lawful means already initiated when the seizure was made.'" *Wilburn*, 50 Kan. App. 2d at 683-84. Here, the police were about to seek a warrant when the seizure began. According to the testimony, Daugherty's statement was only one line in the search

13

warrant—but neither the search warrant nor the affidavit upon which it was based have been included in the record on appeal.

We conclude that the appellate record is not sufficient for us to determine what evidence against Daugherty, if any, would inevitably have been discovered. The district court, which makes factual findings from the evidence, is the appropriate court to make this determination.

We note that the State has also argued that any error here would have been harmless. A constitutional error may be considered harmless if the party benefiting from the error proves there is no reasonable possibility that the error influenced and contributed to the decision. *State v. Swindler*, 296 Kan. 670, 684, 294 P.3d 308 (2013).

We cannot address this issue without the district court's factual findings regarding inevitable discovery. Accordingly, we decline to express any views regarding the application of the harmless-error rule to this case; it would be premature to do so.

Before we close our opinion, we will address one other issue in the interest of judicial economy. Daugherty argues that the district court failed to inform her of the right to a jury trial and that, therefore, she did not knowingly and voluntarily waive that right. As a consequence of an ineffective waiver, she asserts that her conviction should be reversed and the matter remanded to the district court for a new trial. The issue is arguably moot, since her conviction must be set aside anyway so that the district court may further review the admissibility of evidence. But the issue would arise again on remand, so we will address it for the parties' guidance.

A criminal defendant's right to a jury trial is guaranteed by both the United States and Kansas Constitutions. U.S. Const. Amend. VI; Kan. Const. Bill of Rights, §§ 5, 10. Defendants charged with felonies also have a statutory right to a jury trial. K.S.A. 22-

14

3403(1) (requiring jury trials for felony charges unless the defendant, prosecuting attorney, and court agree to a trial to the court). The defendant may waive his or her right to a jury trial, but "'the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right in writing or in open court for the record.'" *State v. Lewis*, 301 Kan. 349, 377, 344 P.3d 928 (2015) (quoting *State v. Irving*, 216 Kan. 588, 590, 533 P.2d 1225 [1975]). The test for determining whether a waiver is valid is "whether it was voluntarily made by a defendant who knew and understood what he or she was doing" based on the particular facts and circumstances of the case. *Beaman*, 295 Kan. at 858. We cannot presume a defendant waived the jury-trial right if the record does not say so, and waivers are "strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury." *Beaman*, 295 Kan. at 858 (citing *Irving*, 216 Kan. at 589).

The relevant caselaw makes it clear that the district court must personally advise the defendant of his or her right to a jury trial on the record. *State v. Mullen*, 51 Kan. App. 2d 514, 525-26, 348 P.3d 619 (2015), *petition for rev. granted* October 9, 2015; *State v. Johnson*, 46 Kan. App. 2d 387, 400, 264 P.3d 1018 (2011) (waiver in stipulation of facts is not effective), *rev. denied* 293 Kan. 1111 (2012); *State. v. Bowers*, 42 Kan. App. 2d 739, 741, 216 P.3d 715 (2009) (defendant's attorney's request for a bench trial was not valid waiver of jury-trial right); *State v. Hosler*, No. 104,425, 2011 WL 4031541, at *3 (Kan. App. 2011) (unpublished opinion) (signed written waiver stating attorney informed defendant of right is not valid). The district court's discussion with the defendant doesn't need to be extensive, so long as it shows that the court informed the defendant of the right to a jury trial. *Lewis*, 301 Kan. at 374-75, 377-78 (no requirement to inform defendant of *Batson* challenges before accepting waiver); *State v. Dorantes*, No. 111,224, 2015 WL 4366452, at *6 (Kan. App. 2015) (unpublished opinion) (no requirement to inform defendant that jury must unanimously find him guilty beyond a reasonable doubt before accepting waiver), *petition for rev. filed* July 23, 2015; *State v. Lira*, No. 104,053, 2011 WL 3795391, at *1-2, *rev. denied* 293 Kan. 1111 (2012)

15

(unpublished opinion) (district court asking if defendant wished to waive the right to trial and informing him that waiver would result in the judge deciding the case was a sufficient waiver).

Here the record does not show that Daugherty was informed *by the court* of her right to a jury trial before waiving that right. The State argues that Daugherty's mere presence at a scheduling hearing, during which *her lawyer* told the district court that the parties would like a bench trial, is sufficient to show a knowing and voluntary waiver. But our court has held that a lawyer's request for a bench trial is not sufficient to show the defendant knowingly and voluntarily waived the right to a jury trial. *Bowers*, 42 Kan. App. 2d at 741. The State further notes that the defendant admitted she waived her jury-trial right on the record at the bench trial. The State is correct that Daugherty waived her right, but mere waiver is not sufficient, as there must be some indication that the court informed the defendant of the right to a jury trial. See *Hosler*, 2011 WL 4031541, at *4. Here, the only exchange between the district court and Daugherty focused on the meaning and effect of a trial on stipulated facts, not the right to a jury trial. Asking Daugherty whether she understood she might be found guilty at a bench trial on stipulated facts "because you've waived your jury trial" does not indicate that the court actually informed Daugherty of her right to a jury trial. Accordingly, the present record does not establish that Daugherty knowingly and voluntarily waived her right to a jury trial. On remand, the district court must advise Daugherty of her right to a jury trial before accepting a waiver of that right.

The district court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion.