NOT DESIGNATED FOR PUBLICATION

No. 122,590

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN LEROY JORDAN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed January 28, 2022. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., POWELL and ISHERWOOD, JJ.

PER CURIAM: Justin Leroy Jordan appeals his convictions of possession of methamphetamine and unlawful use of drug paraphernalia. Jordan's only claim on appeal is that the district court erred in denying his pretrial motion to suppress the evidence. More specifically, Jordan claims the district court erred when it denied his motion to suppress because his encounter with law enforcement—which began as a lawful investigatory detention—morphed into an illegal seizure when the officer continued to detain him and searched his person after he was no longer a suspect. For the reasons explained below, we reject Jordan's claim and affirm the district court's judgment.

1

On September 1, 2017, Topeka Police officers were called to investigate a possible residential burglary in west central Topeka. Sergeant Dan Wilson and his partner, Officer Evan Friedrichs, arrived on the scene and detained two suspects on the front porch of the residence—a man and a woman. The man identified himself as Jordan. A family member also arrived at the residence and told the officers that the owner of the property had recently died and that the house was vacant. Friedrichs checked to see if either suspect had outstanding warrants. Wilson questioned Jordan about the reason he was at the vacant house, who he was meeting, and where he parked his car. Jordan told Wilson that he had run out of gas and his car was somewhere around the corner.

After Friedrichs found no outstanding warrants, the officers discussed whether they should release the suspects. Meanwhile, another officer investigated Jordan's story about the whereabouts of his car. Wilson approached Jordan and asked him if "he had any tools on him," to which Jordan replied that "he had a screwdriver in his pocket." Wilson removed the screwdriver from Jordan's pocket and noted it was a "pry screwdriver" consistent with a burglary tool. Wilson continued to search Jordan. He patted down the right side of Jordan's pant pocket and felt a metal object. Wilson pulled the object out and noted that the object was a set of keys. When Wilson pulled out the keys, he noticed a plastic baggie with white residue or substance in it. Wilson field tested the white substance which tested positive for methamphetamine.

On September 21, 2017, a grand jury indicted Jordan for possession of methamphetamine and unlawful use of drug paraphernalia. Before the trial, Jordan moved to suppress the evidence. The written motion argued:

> "Here, the defendant challenges the unreasonableness of the officer's continued seizure after the officer completed his initial investigation. Instead of releasing the

defendant, the officer questioned the defendant to request consent for a search. The defendant consented to the search. But, when reviewing the taint analysis, it is evident that the officer still violated the defendant's Fourth Amendment rights."

On January 2, 2018, the district court held a hearing on Jordan's motion and Wilson testified to the above events. Wilson testified the officers were detaining Jordan and he was not free to leave even after finding no outstanding warrants. Wilson testified that "[n]one of the stories that we had gotten had added up, like where the car was or, the person they were there to see, the family showing up." Wilson admitted that he and Friedrichs discussed the possibility of releasing the suspects. But instead of releasing Jordan, Wilson asked him for permission to search him. Wilson testified that he asked the question "in furtherance of investigating the call we were on." Wilson's body camera video, admitted as an exhibit at the hearing, showed the entire encounter from when Wilson approached Jordan to the time of the search was about 14 minutes.

The district court denied Jordan's motion finding that even if there were conversations between the officers about whether they should release Jordan, the burglary investigation was still ongoing. The court reasoned that the officers never told Jordan the investigation was complete or that he was free to go. The court distinguished Jordan's detention from a prolonged car stop. It said that in a car stop, officers can only detain for as long as necessary to carry out the stop. After a traffic stop is complete the driver is free to go. But the court found that in Jordan's case, the officers were investigating a possible burglary and the questions asked by Wilson were in line with that investigation. It also noted that the officers did not detain Jordan for a "lengthy time" based on the circumstances.

On March 5, 2018, Jordan's case went to trial. When the State introduced the baggie of methamphetamine, defense counsel objected to "the prior rulings that the court has made" and made a "contemporaneous objection to preserve his appeal rights." The

3

district court admitted the evidence. Wilson again testified to his interaction with Jordan. During his trial testimony, after the baggie of methamphetamine was already admitted into evidence, Wilson seemingly contradicted his pretrial testimony and stated that Jordan was no longer a suspect at the time of the search.

The jury found Jordan guilty as charged. Jordan at first failed to appear for sentencing and the district court issued a bench warrant. On February 13, 2020, the district court sentenced Jordan to 30 months' imprisonment but granted probation for 18 months conditioned on drug treatment. He timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR IN DENYING JORDAN'S MOTION TO SUPPRESS?

Jordan's only claim on appeal is that the district court erred in denying his pretrial motion to suppress. More specifically, Jordan argues that the district court erred when it denied his motion to suppress because his encounter with Wilson, which began as a lawful investigatory detention, morphed into an illegal seizure when Wilson searched Jordan after he was no longer a suspect in the burglary investigation. Jordan asserts that his consent to the search was not enough to purge the taint of the illegal seizure.

The State argues that Jordan failed to preserve this issue for appeal because although Jordan objected to the introduction of the methamphetamine as State's Exhibit 1, he did not object to Wilson's testimony about finding the methamphetamine, the positive field test for methamphetamine, or the testimony of the forensic scientist who confirmed the substance was methamphetamine. Alternatively, the State argues that substantial competent evidence supports the district court's finding that the officers were still investigating a burglary when the baggie containing methamphetamine was found.

We will first address the State's argument on preservation. Kansas law requires a party to "'make a specific and timely objection at trial in order to preserve evidentiary

issues for appeal.'" *State v. Brown*, 307 Kan. 641, 645, 413 P.3d 783 (2018) (quoting *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 [2010]). See K.S.A. 60-404. Even when the district court rules on the admissibility of evidence pretrial, a party must still object at trial before the admission of the evidence because the evidence presented at the pretrial hearing may differ from the evidence at trial. *State v. Sean*, 306 Kan. 963, 971, 399 P.3d 168 (2017). Jordan properly preserved the suppression issue for appeal because he made a contemporaneous objection at trial when the State offered the methamphetamine into evidence. As we will mention later, Jordan's failure to make a continuing objection to all the testimony about the methamphetamine may factor into a harmless error analysis. But Jordan has sufficiently preserved the suppression issue for appeal.

The standard of review of a district court's decision on a motion to suppress applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence, and the court's ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *State v. Hubbard*, 309 Kan. 22, 33, 430 P.3d 956 (2018). The exclusionary rule, a judicially created remedy, protects Fourth Amendment rights through deterrence by preventing the use of unconstitutionally obtained evidence against the subject of the illegal search and seizure. 309 Kan. at 32. "[The exclusionary rule] cannot properly be invoked to exclude the products of legitimate police investigative techniques . . . ." *Terry v. Ohio*, 392 U.S. 1, 13, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

"[A] person is seized when there is a show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that

he or she is not free to leave and the person submits to the show of authority." *State v. Phillips*, 49 Kan. App. 2d 775, 783, 315 P.3d 887 (2013). Courts determine whether an individual has been seized under the Fourth Amendment by classifying the nature of the encounter according to the four recognized types of police-citizen encounters: (1) voluntary or consensual encounters, which are not considered seizures; (2) investigatory detentions, commonly known as *Terry* stops (see *Terry*, 392 U.S. 1), in which an officer may detain a person in a public place if he or she reasonably suspects that the person is committing, has committed, or is about to commit a crime; (3) public safety stops; and (4) arrests. See *State v. Reiss*, 299 Kan. 291, 297, 326 P.3d 367 (2014).

A seizure requires a law enforcement officer to have reasonable suspicion of criminal activity. Our Supreme Court has defined reasonable suspicion as "a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." *State v. Johnson*, 293 Kan. 1, Syl. ¶ 4, 259 P.3d 719 (2011). When reviewing an officer's belief that he or she possesses reasonable suspicion of criminal activity, appellate courts must determine whether the detention is justified by the totality of the circumstances with "deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances . . . . However, the officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." 293 Kan. 1, Syl. ¶ 4.

Reasonable suspicion is an objective standard. An investigatory detention, or *Terry* stop, is constitutionally and statutorily permissible when "an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime." *Hanke*, 307 Kan. at 828; see K.S.A. 22-2402(1). An officer's subjective beliefs play no role in deciding whether an investigatory detention is lawful. *State v. Cash*, 313 Kan. 121, 130, 483 P.3d 1047 (2021).

To begin, Jordan argues that Wilson never testified he feared for his safety or had a reasonable suspicion that Jordan possessed a dangerous weapon, so Wilson was not justified in frisking him for officer safety. See K.S.A. 22-2402(2). The State does not challenge this argument. We agree that although Wilson described the procedure as a pat-down, he conducted a full search of Jordan's pockets in finding the contraband.

The only question on appeal is whether Wilson illegally detained Jordan. Jordan agrees that Wilson's initial contact with him did not offend the Fourth Amendment. But Jordan contends that Wilson's investigatory stop evolved into an illegal detention because Wilson impermissibly extended the scope of the stop when he continued to detain Jordan after he was no longer a burglary suspect. He argues that "[w]hen the police continued to question Jordan after they had concluded their investigation of him and determined he should be allowed to leave, they were illegally detaining him." Jordan does not challenge his consent to the search except to argue it was tainted by the illegal detention.

Jordan's argument is unconvincing. The totality of the circumstances shows that it was objectively reasonable for Wilson to believe that Jordan was committing, had committed, or was about to commit the crime of burglary. Officers were dispatched to investigate a possible burglary of a vacant house and when they responded they found Jordan and a woman on the front porch. Officers identified the suspects, checked for outstanding warrants, and investigated Jordan's story about the whereabouts of his car. Wilson's inquiries of Jordan focused on the nature of the call, and he reasonably asked Jordan if he had any burglary tools. The encounter lasted about 14 minutes. The reasonable suspicion did not dissipate simply because the officers discussed the possibility of releasing the suspects. Reasonable suspicion is an object standard, so the officers' subjective beliefs did not matter anyway. The district court did not err in finding the entire encounter between Wilson and Jordan was a lawful investigatory detention.

Jordan points to Wilson's contradictory trial testimony that Jordan was no longer a suspect at the time of the search. But the trial testimony does not change the result of this appeal. Jordan did not renew his motion to suppress the evidence based on Wilson's trial testimony. And as we have stated, Wilson's subjective belief about whether Jordan was a suspect plays no role in deciding whether the investigatory detention was lawful.

Finally, the State notes that Jordan only objected to the baggie of methamphetamine and not to the admission of Wilson's testimony about finding the methamphetamine, the positive field test, or the testimony of the forensic scientist. Thus, the State argues that admitting the baggie of methamphetamine, if in error, was harmless because the other evidence was sufficient to convict. But we need not engage in a harmlessness analysis because Wilson did not detain Jordan illegally. The district court did not err in denying Jordan's motion to suppress.

Affirmed.